## ERICH MECHLING v. JASPER STONE COMPANY AND ANOTHER.

198 N. W. 2d 561.

June 9, 1972—No. 43135.

*Bundlie & Bundlie* and *O. T. Bundlie, Jr.*, for relator.
*Bey, Ochs & Johnson* and *Victor C. Johnson*, for respondents.

Heard before Knutson, C. J., and Kelly, Todd, and Mason, JJ. Reconsidered on the record en banc.

KELLY, JUSTICE.

Writ of certiorari to the Workmen's Compensation Commission. Employee seeks review of the commission's interpretation of Minn. St. 176.101.[1] The legal question presented is whether

---

[1] Employee is governed by Minn. St. 1965, § 176.101, which reads in part: "Subdivision 1. For injury producing temporary total disability, 66 2/3 percent of the daily wage at the time of injury subject to a maximum compensation of $45 per week and a minimum compensation of $17.50 per week. This compensation shall be paid during the period of

an employee who was temporarily disabled for 203 4/5 weeks as a result of a back injury and who as an end result of such injury

disability, but not exceeding 350 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be.

"Subd. 2. In all cases of temporary partial disability the compensation shall be 66 2/3 percent of the difference between the daily wage of the worker at the time of injury and the wage he is able to earn in his partially disabled condition. This compensation shall be paid during the period of disability, but not beyond 350 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be, and subject to the maximum compensation stated in subdivision 1. * * *

"Subd. 3. For the permanent partial disability from the loss of a member the compensation during the healing period, but not exceeding 104 weeks, shall be 66 2/3 percent of the difference between the daily wage of the worker at the time of injury and any wages he is able to earn in his partially disabled condition; and thereafter and in addition thereto, compensation shall be that named in the following schedule:

* * * * *

"(39) For permanent partial disability resulting from injury to the back, 66 2/3 percent of the daily wage at the time of injury for that proportion of 350 weeks which is represented by the percentage of such permanent partial disability as is determined from competent testimony adduced at a hearing before a referee, a commissioner, or the commission;

* * * * *

"(41) In all cases of permanent partial disability it is considered that the permanent loss of the use of a member is equivalent to and draws the same compensation as the loss of that member, but the compensation in and by this schedule provided shall be in lieu of all other compensation in such cases, except as otherwise provided by this section."

Portions of Minn. St. 176.101 have been amended to read as follows:

"Subdivision 1. For injury producing temporary total disability, 66 2/3 percent of the daily wage at the time of injury subject to a maximum compensation of $80 per week and a minimum compensation of $17.50 per week. This compensation shall be paid during the period of disability, but not exceeding 350 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be.

"Subd. 2. In all cases of temporary partial disability the compensation shall be 66 2/3 percent of the difference between the daily wage

incurred a 30-percent permanent disability to his back is limited to compensation for 104 weeks for a healing period and 105 weeks for the permanent disability. We answer that issue in the negative and, accordingly, reverse.

The facts are not disputed. Employee, a stonecutter, injured his back on July 2, 1965. He returned to full-time work 203 4/5 weeks later with a 30-percent permanent disability to his back. A laminectomy and a bo-plant (or calf bone) spinal fusion was performed on August 28, 1965. Because of this operation, he was unable to work until July 15, 1966. From July 15, 1966, until February 26, 1968, employee either worked part-time or attended an electrical training school. His back prevented him from work-

---

of the worker at the time of injury and the wage he is able to earn in his partially disabled condition. This compensation shall be paid during the period of disability, but not beyond 350 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be, and subject to a maximum compensation of $73 per week. * * *

"Subd. 3. For the permanent partial disability from the loss of a member the compensation for total disability during the healing period shall be as stated in subdivision 1. For partial disability during the healing period the compensation shall be as stated in subdivision 2. The healing period shall not exceed 104 weeks. Thereafter and in addition thereto, compensation shall be that named in the following schedule, subject to a maximum compensation of $73 per week:

* * * * *

"(40) For permanent partial disability resulting from injury to the back, 66 2/3 percent of the daily wage at the time of injury for that proportion of 350 weeks which is represented by the percentage of such permanent partial disability as is determined from competent testimony adduced at a hearing before a compensation judge, a commissioner, or the commission;

* * * * *

"(42) In all cases of permanent partial disability it is considered that the permanent loss of the use of a member is equivalent to and draws the same compensation as the loss of that member, but the compensation in and by this schedule provided shall be in lieu of all other compensation in such cases, except as otherwise provided by this section."

ing more than a few hours a week and retraining proved unsuccessful because of employee's inability to understand much English.[2] It soon became apparent that the first operation was not effective and that the bo-plant had dissolved, leaving him with an unstable back. Finally, on February 27, 1968, a second spinal fusion using bone from the employee's own body was performed. This operation proved satisfactory and employee returned to full-time work on June 6, 1969, with a 30-percent permanent disability to his back.

The commission awarded employee $4,725 for the 30-percent permanent disability (equivalent of 105 weeks of compensation) and $4,680 for the "healing period." Under subd. 3, the "healing period" cannot exceed 104 weeks. Thus, employee's $4,680 award represented 104 weeks of compensation even though employee was out of work for 203 4/5 weeks. The commission's position is consistent with its theory that employee is entitled to the greater of either temporary disability payments under subds. 1 and 2 or permanent partial disability payments under subd. 3.[3]

Employee agrees that he is entitled to payments under subd. 3, including the award for the 30-percent permanent disability and compensation for 104 weeks of "healing period." The issue in this appeal is whether employee is also entitled to temporary disability payments under subds. 1 and 2 for the balance of time that he was out of work in the 203 4/5 weeks. We hold that he is.

The precise issue in this case is one of first impression. While other cases decided by this court have been cited on both sides of the issue, none is controlling or particularly persuasive.[4] We

---

[2] Employee's part-time wages were never sufficient to decrease his compensation award.

[3] See, e.g., Tenn Eyck v. Utilities Service Co. 24 Minn. W. C. D. 842 (1969).

[4] Employee cites Durant v. Butler Brothers, 275 Minn. 487, 148 N. W. 2d 152 (1967); Schulte v. C. H. Peterson Const. Co. 278 Minn. 79, 153 N. W. 2d 130 (1967); Lockner v. The Eich Motor Co. 283 Minn. 171, 167 N. W. 2d 51 (1969). Employer cites Lund v. Biesanz Stone Co. 183 Minn.

must then interpret Minn. St. 176.101, the compensation schedule section of the Workmen's Compensation Act. In this connection we should and do bear in mind the policy stated in Radzak v. Mercy Hospital, 291 Minn. 189, 192, 190 N. W. 2d 86, 89 (1971): "* * * [T]he Workmen's Compensation Act is remedial and humanitarian in its purpose and is to be given a broad, liberal construction in favor of the interests of the claimant."

The legislature has given us some additional guidelines for interpretation of statutes in Minn. St. c. 645. Minn. St. 645.16 contains the provisions most pertinent to this case:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. *Every law shall be construed, if possible, to give effect to all its provisions.*

"*When the words of a law and their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.*

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

\* \* \* \* \*

"(4) *The object to be attained;*

\* \* \* \* \*

"(6) *The consequences of a particular interpretation;*

\* \* \* \* \*

"(8) *Legislative and administrative interpretations of the statute.*" (Italics supplied.)

Likewise, Minn. St. 645.17 provides in part:

"In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

247, 236 N. W. 215 (1931); Martin v. Swift & Co. 269 Minn. 217, 130 N. W. 2d 522 (1964).

"(1)   The legislature does not intend a result that is absurd, impossible of execution, or unreasonable;

"(2)   The legislature intends the entire statute to be effective and certain."

If we go to the letter of the law and a literal reading of the statute, § 176.101, subd. 3, grants to an employee compensation for a healing period of up to 104 weeks and scheduled payments for permanent partial disability. Subd. 3 is not stated to be an exclusive remedy. In fact, under that subdivision, the compensation provided shall be "in lieu of all other compensation in such cases, except as otherwise provided by this section." The use of the word "section" clearly indicates that an employee may recover pursuant to other subdivisions within that section. Subds. 1 and 2 of the section provide compensation for temporary total disability and temporary partial disability. Thus, if these three subdivisions are read literally, an employee could receive compensation for either temporary total disability or temporary partial disability and at the same time receive 104 weeks of compensation during the healing period and at the end of 104 weeks he could continue to receive benefits for temporary total or temporary partial disability up to the end of 350 weeks, at which time he could be compensated under the appropriate schedule in subd. 3 for permanent partial disability. This interpretation would result in a doubling of benefits during the first 104 weeks of disability, and if we were to construe the statute to permit an employee to receive compensation for a 104-week healing period and in addition permit him to receive benefits for up to 350 weeks for temporary total or temporary partial disability, it would result in a pyramiding of benefits. Either of these interpretations would give effect to all provisions of § 176.101 as the construction statute suggests should be done. It can be argued that these interpretations are within the letter of the law. It goes without saying that it would be a liberal construction of the law.

We doubt that the legislature had any intention of giving double benefits during the so-called healing period, primarily

because it would be an unreasonable result—a result that even the employee does not here seek. For the same reasons, an interpretation that would pyramid the 104-week healing period and the 350 weeks under subds. 1 and 2 into a total of 454 weeks should be avoided. In addition, the phrase in subd. 3 "in lieu of all other compensation in such cases, except as otherwise provided by this section" cannot be said to be entirely "clear and free from all ambiguity" when considered in context with all the other provisions in the section. In comparing a case involving a long-term 350-week temporary total disability under subd. 1 with no residual permanent partial disability and a case involving a long-term temporary total disability with a residual permanent partial disability, it cannot be denied that there is an obvious injustice and an unreasonable result if the commission's interpretation is used. Similarly, an injustice appears in the instant case. The question then becomes one of avoiding an unreasonable result and at the same time giving effect to the legislative intent as evidenced by the otherwise clear language of subd. 3.

The construction statute guidelines suggest that administrative interpretations be considered. However, the administrative interpretation of the commission in the instant case and others like it in preceding decisions is not to be found in the letter of the law. Furthermore, other sections of the construction statutes, when applied to the facts in the instant case, far outweigh the commission's past interpretations.

The problem with agreeing that the legislature in all probability did not intend to double up benefits during the 104-week healing period with benefits payable under subd. 1 or 2 in spite of the literal language of the statute is that one must answer the next question—why did the legislature put in as the maximum a 104-week healing period if that period could be extended by declaring subd. 1 benefits or subd. 2 benefits were available to the employee after the 104 weeks of healing period had been used up? In many, if not most, cases, the healing period of subd.

3 and the temporary total disability of subd. 1 would be one and the same thing. However, the instant case is an example of there being no healing to speak of during the period of time between the first and second operations. Similarly in Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215 (1931) an employee was temporarily totally disabled for a period of 4 years during which time in spite of several operations there was no cure and probably no healing, as the employee's leg was still useless and painful at the end of the 4 years. Although it might be arguable that the legislature had this type of disability in mind in using the terms "healing period" and "temporary total disability," that it actually did so seems doubtful. Setting forth a maximum healing period of 104 weeks seems inconsistent with the allowance of benefits under subd. 1 or 2 beyond the 104 weeks. However, it is even more inconsistent to deny full benefits for permanent partial disability, which in effect is what happens under the commission's interpretation.

We look to the letter of the law as suggested by Minn. St. 645.16 and in particular to the object to be attained, § 645.16(4), and the consequences of a particular interpretation, § 645.16(6), for further guidance. These considerations seem to be the ones having the most significance in this case.

Obviously, the object to be attained under subd. 3 was to compensate an employee having a permanent partial disability regardless of the amount of wages he had lost or might in the future lose and regardless of the effect of the permanent partial disability on his future employability. Thus, an employee with little or no healing period and with little or no loss of wages may recover for permanent partial disability. The test for permanent partial disability is the loss of function or use. The ability of the employee to perform his work after the healing period despite the loss of the bodily function does not preclude a finding of permanent and partial disability. Hosking v. Metropolitan House Movers Corp. 272 Minn. 390, 138 N. W. 2d 404 (1965). This object is not obtained under the decision of the commission in

the instant case since an employee would be required to elect to take benefits under subds. 1 and 2 for temporary disability or under subd. 3 for a 104-week healing period and the scheduled payments. If the benefits under subds. 1 and 2 would exceed those under subd. 3, he in effect gets nothing for his permanent partial disability. The consequence of the commission's interpretation is that an injustice is done to an employee who has a long period of temporary total disability (350 weeks) and a serious permanent partial disability as compared to an employee who has a long period of temporary total disability (350 weeks) and no residual permanent partial disability. Likewise, the commission's ruling creates a great disparity in compensation between an employee who has a healing period of 1 week and a permanent partial disability and another employee who has a healing period of 350 weeks and the same permanent partial disability.

In summary, the interpretation which gives a liberal construction of the workmen's compensation statute, which gives the greatest effect to all of the provisions of the statute, which is closest to the letter of the law without thwarting the legislative intention, which meets the objectives to be attained, and which has reasonable consequences, is that permitting an employee to obtain compensation for a permanent partial disability as scheduled or otherwise provided for in subd. 3 plus benefits for a healing period of up to 104 weeks and, in addition, if temporarily totally disabled after the healing period, to obtain compensation under subd. 1 while so disabled for an additional number of weeks not to exceed a total of 350 weeks for both the healing period and the period of temporary total disability. Similarly, an employee should be permitted to recover benefits for permanent partial disability plus benefits for a healing period of up to 104 weeks and benefits for any temporary partial disability under subd. 2 for an additional number of weeks not to exceed a total of 350 weeks for both the healing period and the period of temporary partial disability.

In the instant case the employee should not have been limited

to the 104-week healing period but should have been permitted to recover benefits for the 203 4/5 weeks consisting of healing period, temporary total disability, and temporary partial disability, in addition to the scheduled payments for the 30-percent permanent partial disability to his back.

Relator is allowed attorneys' fees of $400.

Reversed and remanded.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.