## EARL BOQUIST v. DAYTON-HUDSON CORPORATION.

209 N. W. 2d 783.

July 13, 1973—No. 44103.

*Sween & Salazar* and *Harlan G. Sween,* for relator.

*Faegre & Benson, G. Alan Cunningham,* and *George W. Flynn,* for respondent.

*Scholle, Schweiger & Scholle* and *Mark Scholle,* for Maryland Casualty Company, amicus curiae.

KELLY, JUSTICE.

Writ of certiorari to the Workmen's Compensation Commission to review its decision denying employee-relator simultane-

ous benefits for permanent total disability and permanent partial disability. We affirm.

Before injuries led to his eventual inability to work, Earl Boquist was a fork truck operator, employed by respondent, Dayton-Hudson Corporation. While so employed, he injured his left knee on a number of occasions between 1961 and 1963. After knee surgery in 1963, he returned to work and continued on a regular basis with only periodic loss of work time until August 8, 1967, after which he underwent a second operation on his knee. Since that time he has not worked.

The employer has paid temporary total disability benefits from August 9, 1967, to May 12, 1970, and thereafter paid permanent partial disability benefits for 33 weeks until December 29, 1970. On April 19, 1971, employee filed a claim with the Workmen's Compensation Commission alleging permanent total and permanent partial disability benefits in excess of the amounts previously paid. The compensation judge awarded temporary total disability benefits until May 12, 1970. In addition, employee was awarded permanent partial disability for his left knee condition but permanent total disability benefits were denied. On appeal, the commission reduced the permanent partial disability award for the left knee and added a permanent partial disability award for the right leg. The commission also found that employee was permanently totally disabled from August 8, 1967, but denied simultaneous benefits for permanent partial disability after this date. Employer was given credit for all payments of compensation paid after August 8, 1967. The question before us is whether an employee may recover both permanent partial and permanent total disability benefits during the same period of time.

Minn. St. 176.101, subd. 3, provides a schedule of benefits to be paid for specified physical impairments which constitute permanent *partial* disability of an employee. The amount of benefits to be paid is based on a percentage of the daily wage rate

of the employee at the time of injury for a varying number of weeks depending on the particular disability.

Subdivision 4 of Minn. St. 176.101, allows compensation for permanent total disability at the rate of 66 2/3 percent of the daily wage of the employee at the time of injury. Minn. St. 176.101, subd. 5, defines total disability as follows:

"The total and permanent loss of the sight of both eyes, the loss of both arms at the shoulder, the loss of both legs so close to the hips that no effective artificial members can be used, complete and permanent paralysis, total and permanent loss of mental faculties, or any other injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability."

It is obvious that an employee can be no more than totally disabled and that a finding of total or complete disability necessarily includes the less disabling condition of permanent partial disability. There is no greater disability than permanent and total.

Employee here argues that payment for permanent total disability is paid for a wage loss and that permanent partial disability is intended to compensate an employee for the disability to a specific rated injury, in this case, employee's legs. Thus, the award for the specific rated injury would be in the nature of general damages. This argument assumes that the legislature intended to give an employee benefits under both subdivisions of the statute (Minn. St. 176.101, subds. 3 and 4) at the same time as distinct and separate benefits.

We do not agree that two different theories of recovery are present in the statute. The singular theory of workmen's compensation is to provide compensation based on impairment of earnings because of a work-related injury. In some instances, this loss of earnings may be actual in that the employee is unable to gain income through employment. On the other hand, in the case of scheduled permanent partial disability, loss of earnings

is conclusively presumed regardless of an employee's ability to work at the same or greater earnings.

Employee cites Mechling v. Jasper Stone Co. 293 Minn. 309, 198 N. W. 2d 561 (1972) in support of his contention. In Mechling, the commission found that the employee sustained a 30-percent permanent disability to his back. Minn. St. 1965, § 176.101, subd. 3(39), provides for compensation for such an injury for that proportion of 350 weeks which is represented by the percentage of such permanent partial disability. Thus, the statute specifically ties permanent partial disability to the loss of function or use. The ability of the employee to perform his work despite the loss of the bodily function does not preclude the granting of compensation for permanent and partial disability. Hosking v. Metropolitan House Movers Corp. 272 Minn. 390, 138 N. W. 2d 404 (1965).

Because an employee does not have to prove that his loss of function or use of some part of his body for which scheduled payments are provided by statute has resulted in an impairment of earnings in order to secure the scheduled payments, it might appear at first glance that such awards are for general damages, not related in any way to earning capacity. However, this type of reasoning overlooks the basic principle of compensation law that benefits relate to loss of earning capacity. This theory is discussed in 2 Larson, Workmen's Compensation Law, § 58.10:

"The typical schedule provides that, after the injury has become stabilized and its permanent effects can be appraised, benefits described in terms of regular weekly benefits for specified numbers of weeks shall be paid * * *. These payments are not dependent on actual wage loss. Evidence that claimant has had actual earnings, or has even been regularly employed at greater earnings than before, is completely immaterial.

"This is not, however, to be interpreted as an erratic deviation from the *underlying principle of compensation law—that benefits relate to loss of earning capacity and not to physical injury as such.* The basic theory remains the same; the only difference

is that the effect an earning capacity is a conclusively presumed one, instead of a specifically proved one based on the individual's actual wage-loss experience. The effect must necessarily be a presumed one, since it would be obviously unfair to appraise the impact of a permanent injury on earning capacity by looking at claimant's earning record for some relatively short temporary period preceding the hearing. The alternative is to hold every compensation case involving any degree of permanent impairment open for a lifetime, making specific calculations of the effect of the impairment on claimant's earnings each time claimant contends that his earnings are being adversely affected. To avoid this protracted administrative task, the apparently cold-blooded system of putting average-price tags on arms, legs, eyes, and fingers has been devised." (Italics supplied.)

Because permanent partial and permanent total disability benefits both compensate for lost earnings either actual or presumed, and because partial disability merges with and is a part of total disability, we hold that payment of both classes of benefits during the same period of time creates overlapping of compensation which is not permitted by the Workmen's Compensation Act.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.