## META PRAMSCHIEFER v. WINDOM HOSPITAL AND ANOTHER.

211 N. W. 2d 365.

August 24, 1973—No. 43941.

Raymond W. Fitch, for relators.
Richard A. Miller, for respondent.

PER CURIAM.

On petition of relators, Windom Hospital and Argonaut Insurance Company, we issued a writ of certiorari to the Workmen's Compensation Commission. The principal issue is whether the commission properly granted employee-respondent, Meta Pramschiefer, an award for permanent partial disability while she was at the same time receiving temporary total disability benefits.

Employee suffered injuries to the lumbar spine and left wrist in the course of her employment. The compensation judge determined that she had a minimum of 10 percent permanent partial disability to the left hand and wrist and a minimum of 20 percent permanent partial disability to the back. He also found that she was temporarily totally disabled up to and on the date of the hearing. The compensation judge ordered payment of temporary total disability but reserved the question of permanent partial

disability until the employee returned to sustained gainful employment.

The commission adopted the findings of the compensation judge and ordered relators to pay temporary total disability benefits for the period up to the date of the hearing and to continue payment after the hearing, subject to the limitations of the workmen's compensation law. It further ordered that employee receive a lump-sum payment representing the minimal permanent partial disability of the left hand and wrist and back found by the compensation judge at the time of the hearing.

The main question for our determination is whether an employee may receive benefits for permanent partial disability while at the same time receiving temporary total disability benefits.

Minn. St. 176.101, pertaining to temporary total disability and permanent partial disability, provides in part as follows:

"Subdivision 1.  For injury producing temporary total disability, 66 2/3 percent of the daily wage at the time of injury subject to a maximum compensation of $80 per week and a minimum compensation of $17.50 per week. This compensation shall be paid during the period of disability, but not exceeding 350 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be.

\* \* \* \* \*

"Subd. 3.  For the permanent partial disability from the loss of a member the compensation for total disability during the healing period shall be as stated in subdivision 1. \* \* \* The healing period shall not exceed 104 weeks. Thereafter and in addition thereto, compensation shall be that named in the following schedule \* \* \*."

Subd. 3 then goes on to comprehensively schedule benefits for specific injuries.

Section 176.021, subd. 3, contains directions for the payment of compensation and provides in pertinent part:

"All employers shall commence payment of the compensation at the time and in the manner prescribed by this chapter without the necessity of any agreement or any order of the commission. * * * [P]ayments shall be made as nearly as may be at the intervals when the wage was payable; provided, however, *that payments for permanent partial disability shall be made by lump sum payment* * * * without the necessity of any agreement, or order of the commission, *upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, unless, upon good cause shown, it is otherwise ordered by the commission.* If doubt exists at such time as to the eventual permanent partial disability, payment shall be then made for the minimum permanent partial disability ascertainable in lump sum, and further lump sum payment shall be made upon any later ascertainment of greater permanent partial disability." (Italics supplied.)

In Mechling v. Jasper Stone Co. 293 Minn. 309, 198 N. W. 2d 561 (1972), we held that an employee who suffered permanent partial disability but was still temporarily totally disabled at the end of the 104-week healing period provided in § 176.101, subd. 3, could thereafter continue to receive temporary total disability benefits under § 176.101, subd. 1. We held that a just and liberal interpretation of the statute required that recovery for a permanent partial disability include not only the scheduled benefits and up to 104 weeks of healing period benefits but also, when necessary, up to 246 additional weeks of temporary total disability benefits for a total of up to 350 weeks, the maximum allowed by § 176.101, subd. 1. In the Mechling opinion, we also indicated that employees should not receive a double recovery of benefits.

In this case we must decide whether the lump-sum permanent partial disability benefits scheduled by the statute may be paid prior to the termination of the temporary total disability benefits.

Employer-insurer argues that permanent partial disability

benefits should not be paid until after the termination of temporary total disability benefits since receiving temporary total disability benefits and permanent partial benefits simultaneously constitutes a double recovery. Employee argues that receiving both benefits simultaneously does not constitute a double recovery since recovery for permanent partial disability is based on a different and distinct concept than recovery for temporary total disability. Employee contends that permanent partial disability benefits are an indemnity for loss of a member or function of the body, in the nature of general damages, and that temporary total disability benefits are for loss of earnings.

In Boquist v. Dayton-Hudson Corp. 297 Minn. 14, 209 N. W. 2d 783 (1973), we held that an employee may not recover both permanent total and permanent partial disability benefits because permanent partial disability benefits, like permanent total disability benefits, are intended to compensate for lost earnings; thus, to permit the payment of both classes of benefits during the same period of time creates overlapping of compensation which is not permitted by the Workmen's Compensation Act. Our holding in the Boquist case that permanent partial disability benefits are for a presumed loss of earnings is dispositive of employee's argument in this case regarding the nature of permanent partial disability benefits. Since temporary total disability is also for loss of earnings, simultaneous payments for permanent partial disability and for temporary total disability constitute double payments for lost earnings. While the benefits for temporary total disability and permanent partial disability are both based on loss of earnings, actual or presumed, they are distinct and different benefits, to each of which an employee is entitled at some point in time. We only decide here that the legislature did not intend that benefits should be paid simultaneously because that would result in double payments. We hold that permanent partial disability payments should await the cessation of payments for temporary total disability unless, as stated below, the commission, upon good cause shown, orders otherwise.

Employee contends that § 176.021, subd. 3, implies that the lump-sum payment for permanent partial disability must be paid at the end of 104 weeks rather than at the termination of temporary total disability benefits. As set forth above, § 176.021, subd. 3, states that payments for permanent partial disability "shall be made by lump sum payment * * * upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained." Section 176.101, subd. 3, refers to a healing period of 104 weeks. Thus, employee concludes that, as far as ascertainable, the permanent partial disability payments must be paid at the end of the 104-week period referred to in § 176.101, subd. 3.

The reference to "healing period" in § 176.021, subd. 3, makes no mention of any particular length of time. In our opinion, however, it is reasonable to conclude that the healing period referred to in that section includes the period during which temporary total disability benefits are paid since a finding of temporary total disability presupposes a continuing healing period. That interpretation is also consistent with our opinion in Mechling. Therefore, we hold the legislature intended in § 176.021, subd. 3, that, in the usual and customary workmen's compensation proceeding, benefits for permanent partial disability are to be paid at the termination of the temporary total disability benefits.

Section 176.021, subd. 3, also states that "payments for permanent partial disability shall be made * * * upon cessation of payments for the healing period, or as soon thereafter as such disability can be ascertained, *unless upon good cause shown, it is otherwise ordered by the commission.*" (Italics supplied.)

The italicized language authorizes the commission to order a lump-sum payment of at least the minimum permanent partial disability at any time before or after the cessation of payments for the healing period if good cause is shown by the employee. If, as in this case, the employee is paid permanent partial disability under that provision of the statute while at the same time he is receiving temporary total disability payments, and it is

later determined that the employee is entitled to permanent total disability payments, the employer-insurer is entitled to a credit for the permanent partial disability payments which the commission had previously ordered paid to the employee. To do otherwise would result in a double recovery of benefits which we have disapproved in Mechling and Boquist. Because such a credit may result in a period of time during which a disabled employee would receive no benefits whatever, we believe the better course is for the commission to be cautious in the granting of permanent partial disability benefits prior to the termination of the temporary total disability benefits.

The language of the statute leaves us no alternative but to hold that the commission may order the payment of permanent partial disability benefits at any time including, as here, prior to the cessation of payments for the healing period, if good cause is shown. Since no finding was made by the commission whether good cause was shown by employee in the instant case, we remand this matter to the commission for such a determination and for whatever other action may be required based upon its determination.

After examining the record, we conclude that the commission's finding of temporary total disability is supported sufficiently by the evidence.

Reversed and remanded for proceedings consistent with this opinion.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.