ESTHER GRGURICH v. SEARS, ROEBUCK & COMPANY.

223 N. W. 2d 120.

September 27, 1974—No. 44381.

*Gray, Plant, Mooty & Anderson* and *Robert V. Bolinske,* for relator.

*Erickson & Casey* and *Carl E. Erickson,* for respondent.

*Warren Spannaus,* Attorney General, *Jonathan H. Morgan,* Solicitor General, and *Winston Ehlmann,* Special Assistant Attorney General, for intervenor.

Heard before Otis, MacLaughlin, and Yetka, JJ., and considered and decided by the court.

MacLaughlin, Justice.

On petition of relator-employer, Sears, Roebuck & Company, we issued a writ of certiorari to the Workmen's Compensation Commission. A compensation judge found that employee had sustained a personal injury arising out of and in the course of her employment; that she had been intermittently temporarily totally disabled to July 19, 1968, for which employer had paid compensation for 79 weeks in the sum of $2,738.93, and had furnished medical care and treatment in the sum of $5,929.50; that employee had sustained further continuing temporary total disability from on or about August 1, 1968, to and including the date of the hearing on July 16, 1971, and remained so disabled on that date; and, additionally, that she had sustained a 35-percent permanent partial disability of the back.

The Workmen's Compensation Commission adopted and affirmed the findings of the compensation judge and the award made pursuant to them. The principal issues on appeal are whether employee's disability is causally related to an accident in February 1966, and whether, as a result, employee has been continuously temporarily totally disabled since July 19, 1968. We affirm in part and reverse in part.

Employee is a 57-year-old woman who has a history of back problems dating from 1960, when she first complained of pain in the midback, hips, and pelvic area. On February 10, 1966, em-

ployee fell from a small stepstool while working at employer's store in Brainerd. She worked the remainder of that day, and the following day she saw Dr. William J. Knipp, who found she had contusions and ecchymosis of the right forearm and left buttock and hip area. She returned to work after Dr. Knipp examined her and continued to work during February, March, and through the week ending April 9, 1966. During this period she performed the same kind of work she had done previously, working the same hours and number of days, but she testified that she "favored" her back.

Employee took time off from work in April 1966 to take an automobile trip with her husband to the eastern part of the United States. The trip began the last week in April and continued until just prior to Memorial Day. It included visits to New Jersey, Pennsylvania, and Washington, D.C. Employee and her husband took another automobile trip to attend their son's wedding in Pennsylvania sometime in early July 1966. With the exception of time off for the second trip in July, she continued to work from the time she returned from the first trip in late May through the first week of September 1966.

Several witnesses who appeared at the compensation hearing testified that, upon returning from her vacation trip in May, employee told them that she had been involved in a rear-end automobile accident while on the trip. Mrs. Shirley Chadwick, a fellow employee, testified that Mrs. Grgurich told her that while they had been on their vacation "they had stopped or something and turned or something, and someone plowed into the back of them and they were shook up." A second fellow employee, Mardel Dufrene, testified that Mrs. Grgurich told her that she had "some kind of accident enroute to the East. I think it was Pennsylvania, the State." A Mr. Leibold and Elsie Wittwer, both fellow employees, testified that Mrs. Grgurich had told them about her automobile accident on the trip east. Finally, a fifth fellow employee, Eva Smith, testified that claimant told her that she had been involved in an automobile accident during the trip

and added, "I just know she told us about her trip and she was very disgusted with this car accident."

Employee denied that any accident ever occurred or that she ever told anyone that it did occur. Employee's husband also denied that any accident occurred.

Employee quit working for employer in September 1966. She testified that she quit because her back was hurting so badly that she could no longer work. However, there is also evidence that employee had advised the manager of the Sears store that she planned to quit working after the Christmas season of 1966 so that she could help her husband at the family-owned grocery store. At times in 1967 employee did work at the grocery store where she helped make out grocery orders, ran errands, and helped with the bookkeeping.

In late 1966 and early 1967, employee saw several doctors concerning her back problem. One of them, Dr. Lyle French, said in December 1966 that she was capable of doing light sedentary work such as taking telephone orders. In turn, employer claims, it offered light work in early 1967. Employee testified that she knew in April 1967 of employer's claim that it had offered her reemployment but that she did not return. In May 1967, she was admitted to University Hospital, and X-rays were taken that revealed a developmental spondylolisthesis of the L4-5 section with degenerative changes. On July 24, 1967, employee underwent surgery consisting of a spinal fusion and laminectomy for her back condition.

Subsequent to the 1967 surgery, employee was seen by a number of doctors, including her own doctor, Dr. Paul G. Patterson, and Drs. Donald R. Lannin and Malvin J. Nydahl. Dr. Patterson, the surgeon who performed the 1967 spinal fusion, was of the opinion in July 1968, after examining employee, that she was sufficiently improved to return to work as long as she did no heavy lifting or prolonged standing.

On September 4, 1968, after examining employee at the request of employer, Dr. Lannin was of the opinion that employee should

be at work within the physical limits of a person who has had a spinal fusion. Dr. Nydahl, after examining employee at employer's request, was also of the opinion that employee could work and should work. Dr. Nydahl felt that employee's fusion was solid and that "every attempt should be made to have this patient return to work."

However, employee did not return to work. She testified that she was unable to work immediately after the surgery because of the healing period required which took longer than usual because of surgical complications that arose which were unrelated to the condition of her back. Shortly after she had fully recovered from the surgery, in the spring of 1968, employee claimed her back began hurting again. She again consulted Dr. Patterson who felt at the time, according to his written report, that she was sufficiently improved so that she could return to work.

On August 21, 1970, after experiencing further difficulties, employee underwent a second surgical procedure, a decompressive laminectomy, performed by Dr. Patterson.

The doctors have varied opinions regarding the amount of permanent partial disability from which employee suffers as a result of the back condition. Dr. Patterson feels that employee has a 40- to 50-percent permanent partial disability, 75 percent of which is attributable to the work-related accident. Dr. Lannin states that employee has a 30-percent permanent partial disability, no more than 10 percent of which is attributable to any one accident or injury. Dr. Nydahl rates employee as having a 30-percent permanent partial disability, 10 percent of which is attributable to the fall at work. Finally, Dr. Lawrence A. Farber, who saw employee at employer's request, stated that employee has a 30- to 40-percent permanent partial disability, but made no specific findings as to how much of that disability should be attributed to the work-related accident.

Employer paid employee temporary total disability for various periods up to July 19, 1968, at which time the payments were discontinued.

■ Employer claims that the evidence does not support a finding that employee's disability is causally related to the fall she sustained in February 1966 while working for employer. The scope of our review of decisions of the Workmen's Compensation Commission is to determine if there is credible evidence on which the commission's findings may be based. Villebrun v. Fryrear, 288 Minn. 478, 183 N. W. 2d 279 (1970). Findings of the commission upon questions of fact will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. MacNamara v. Boyd Trust, 287 Minn. 163, 177 N. W. 2d 398 (1970); Anderson v. Jensen, 289 Minn. 432, 184 N. W. 2d 774 (1971); Snyder v. General Paper Corp. 277 Minn. 376, 152 N. W. 2d 743 (1967).

Based upon these standards, the commission's finding that employee's disability is causally related to the fall must be affirmed. Several of the medical witnesses ascribed at least a portion of her disability to the fall. Since the finding of the commission is definitely supported by credible medical evidence, we affirm this finding.

■ Employer claims that the evidence does not support the finding that employee was continuously temporarily totally disabled from on or about August 1, 1968, to the date of the hearing on July 16, 1971. Employer relies upon the following:

(a) Employee's doctor, Dr. Patterson, stated that she was able to return to work in July 1968. Drs. Lannin and Nydahl also stated that employee was capable of returning to work. There was no testimony to the contrary other than that of employee.

(b) Employee's activities during the period subsequent to August 1, 1968, claims employer, militate against a finding of total disability. These activities included an automobile trip that employee took in the winter of 1970-71 with her husband during which they drove to New Jersey and down the East Coast to Florida. From there they went to Puerto Rico, after which they

drove from Florida to Arkansas and back to Minnesota, passing through several states and covering a distance of approximately 4,500 miles.

Other evidence presented regarding activities engaged in by employee which appears inconsistent with her claim of total disability included the testimony of Eleanor Gamradt, who worked at the same Sears store in Brainerd and who testified that she observed employee dancing in the fall of 1968. She testified as follows:

"Q. Would you describe what you observed on that occasion and where it took place and the circumstances as you recall them of that observation?

"A. I saw her come into Harold's Club with a number of people, six or eight in the crowd, and she went back in the ballroom and for 2 or 3 hours we were there I saw her dancing more than once, but I wouldn't say how many times, and one dance was definitely a polka and she danced that very well and kept up with everybody else and seemed to have a good time.

\* \* \* \* \*

"Q. I don't suppose you were making any special note of the number of times she danced?

"A. No, but I especially watched her because I knew she was supposed to be sick. That is what I noticed. Whether it was right after surgery or sometime, I was wondering how she could dance if she wasn't well enough to work.

\* \* \* \* \*

"Q. All you knew then was that she was on 'sick pay' and so you were wondering about her dancing, is that right?

"A. Wondering why she couldn't work if she was well enough to dance. The kind of work she done was not that strenuous, telephone work.

"Q. How long a period of time did you observe her?

"A. All evening, from maybe 10:00 to 12:30, I don't remember, but it was the middle part of Saturday evening, and I think

she left before it closed or before one o'clock, but I wouldn't state the time. It was the better part of the evening."

(c) Employer asserts that the only evidence in support of the finding is the testimony of employee. While the testimony of an employee obviously provides a sufficient basis for a finding of this kind, employer argues that her veracity is subject to serious doubt because of her activities during the period in question and because of the conflict between her testimony and that of five of her fellow employees who testified that she told them about an automobile accident during the automobile trip in April and May 1966, which employee now denies.

While we are extremely reluctant to disturb findings of fact of the commission, our careful review of the evidence has convinced us that this is one of the infrequent cases in which there is insufficient evidence to support the finding of the commission. Taking the opinions of the medical experts, the activities of employee during the period, and the circumstances which create doubt as to the credibility of employee's testimony, we conclude, as a matter of law, that employee was not temporarily totally disabled during the entire period from August 1, 1968, to July 16, 1971. On the other hand, it is apparent that due to employee's second operation in 1970, she did suffer some period of temporary total disability after August 1, 1968. Therefore, we remand to the Workmen's Compensation Commission for a determination of what intermittent temporary total disability employee suffered as a result of the accident from and after August 1, 1968.

Other issues raised by employer and employee are either rendered moot by this opinion or are answered by our recent decisions in Mechling v. Jasper Stone Co. 293 Minn. 309, 198 N. W. 2d 561 (1972), and Pramschiefer v. Windom Hospital, 297 Minn. 212, 211 N. W. 2d 365 (1973).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

UPON PETITION FOR REHEARING

On November 13, 1974, the following order was filed:

Upon the files, records, and proceedings,

IT IS ORDERED that the petition for rehearing be and hereby is denied, but with the allowance of $250.00 attorneys' fees to the employee-respondent.

BY THE COURT

Harry H. MacLaughlin

Associate Justice