## KURT M. LEPPING v. HAMMERS CONSTRUCTION COMPANY AND ANOTHER.

252 N. W. 2d 580.

March 18, 1977—No. 46105.

*Reding & Votel,* for relators.

*Sween & Salazar* and *Mark E. Fuller,* for respondent.

PER CURIAM.

Relators seek review of a unanimous decision of the Workers' Compensation Board (now the Worker's Compensation Court of Appeals) reversing the compensation judge's finding as to causation and awarding the employee benefits for temporary

total disability and medical expenses. The issue raised on appeal is whether there is substantial evidence to support the finding that the employee's disabling condition, optic neuritis, was causally related to his employment.

A review of the record reveals that the board had before it credible evidence that the employee's disability was causally related to his employment. Findings of the board upon questions of fact will not be disturbed unless they are manifestly contrary to the evidence. Grgurich v. Sears, Roebuck & Co. 301 Minn. 291, 223 N. W. 2d 120 (1974).

Respondent is allowed $350 attorneys fees.

Affirmed.

OTIS, JUSTICE (dissenting).

Two commissioners of the Workers' Compensation Board (now the Worker's Compensation Court of Appeals) have reversed the determination of the compensation judge with the observation that "[w]e have no reason to doubt the claimant's veracity." I respectfully submit that on this record there was no substantial basis for reversing the findings of the judge who heard and saw the witnesses and was in a better position to assess the veracity of the claimant than was the board. This is a case where, in my opinion, the evidence as a matter of law compelled the conclusions reached by the compensation judge.

The employee, Kurt Lepping, testified that on January 7, 1974, the scaffold on which he was working for the employer was bumped by a backhoe which caused him to fall head first into the bucket, injuring his left eyebrow. He made no complaint of any injury to his eye to either his employer or his co-employees, none of the whom observed any such injury. He continued to work until January 11, when he claims to have been laid off, although the employer asserted he simply did not show up for work.

The employee was originally treated by his own doctor, Dr. Mark LeRud, who had 3 days prior to the injury treated the em-

ployee for a strep throat and congested sinuses. On January 21, Dr. LeRud examined the employee because of his complaint that he had pain in his left eye. Dr. LeRud was of the opinion that this symptom was consistent with his other problems including an emerging wisdom tooth. The doctor saw no cuts or bruises in the area of the employee's left eye and diagnosed his condition as optic neuritis. The employee was referred to an opthalmologist, Dr. Patrick Colliton, and to a neurologist, Dr. Ryan Harrington. The employee did not advise Dr. Colliton that he had had a blow to his head and the doctor found no condition consistent with trauma. Dr. Harrington testified that the cause of the neuritis was unknown and he, too, found no condition which, in his judgment, was caused by trauma. A fourth doctor, Dr. Ernest Larson, Jr., examined the employee on January 23, and based his diagnosis on the assumption that the employee had struck his head on the tractor bucket. He acknowledged that, in most cases, there is no known cause for optic neuritis and agreed that a cold, sore throat, and infection were possible causes of optic neuritis. However, he was of the opinion that employee "probably sustained this very fine fracture of some of the bones in his head that would connect his nose or sinuses with the passageway that the optic nerve would pass through." This testimony was discounted by the compensation judge for the reason that there was no evidence the employee had sustained such a fracture and x-rays revealed no fractures. He reached the following conclusions:

"I conclude upon this record that trauma has not been reasonably established, either factually or by medical testimony, as the probable cause of employee's optic neuritis of his left eye. In so doing, I accept the medical opinions of Dr. LeRud, Dr. Colliton and Dr. Harrington."

\* \* \* \* \*

"\* \* \* The evidence does not reasonably establish that employee did, in fact, fall on January 7, 1974, and strike his left eye-

brow on the rim of the backhoe bucket. The testimony of several eyewitnesses to this claimed occurrence contradicts employee's testimony and results in a substantial doubt in my mind as to exactly what did happen to employee when the scaffolding was jarred."

\* \* \* \* \*

"If employee did sustain a significant blow to his left eyebrow when he fell sufficient to cause immediate pain, soreness and redness in the area of his left eye as he alleges, it seems to me that he would have mentioned the incident to someone at the time. He did not."

Where the testimony of the employee is totally unsupported, as in this case, and all of the evidence including those of disinterested co-employees contradicts and impeaches the employee's version, and the employee's own doctor, in addition to the other doctors, finds no evidence of trauma, it is, in my opinion, an abdication of the fact-finding function of the board to reject out of hand all of the evidence which militates against the employee's position.

I would sustain the findings of the compensation judge.