Harold HENRY, Relator,

v.

SEARS, ROEBUCK AND COMPANY (self-insured), Respondent.

No. 49422.

Supreme Court of Minnesota.

Nov. 30, 1979.

Lindquist & Vennum and Kurtis A. Greenley, Minneapolis, for relator.

Gray, Plant, Mooty, Mooty & Bennett and William L. Killion, Minneapolis, for respondent.

Heard before OTIS, KELLY and WAHL, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Harold Henry filed a workers' compensation claim for thirty-five percent permanent partial back disability as a result of a May 4, 1971, injury and for temporary total or permanent total disability from December 7, 1976, to the present and continuing. The compensation judge awarded the requested temporary total disability and granted an award for thirty percent permanent partial back disability. Sears appealed and Henry cross-appealed to the Workers' Compensation Court of Appeals. The court of appeals modified the thirty percent permanent partial to thirty-five percent permanent partial and terminated the temporary total disability effective April 12, 1977. The termination of the temporary total disability was apparently based on the grounds that Henry had removed himself from the labor market on that date. Henry's petition for certiorari was granted. Sears filed a notice of review on several issues.

We affirm in part, reverse in part, and remand for further findings and for further proceedings if deemed necessary by the court of appeals.

On May 4, 1971, Harold Henry injured his back while working at Sears' television sales department. Henry was removing a seventy-two pound portable television from a display shelf when it slipped from his grasp. He injured his lower back when he caught the television just before it hit the floor.

Following this incident, Henry's back got progressively worse despite various measures taken to alleviate the problem including the wearing of a sacroiliac girdle or brace for support for his lower back, heat treatments, hot baths, and twelve to fourteen aspirin per day. Henry was hospitalized on December 5, 1972. On December 20, 1972, surgery was performed on his lower back by Dr. Hamel, an orthopedic specialist. The operation alleviated the pain temporarily, but within a few months the pain returned to the pre-operation level.

After his recovery from this operation Henry returned to work. Henry continued to work regular hours despite a progressively deteriorating back problem until December 6, 1976, the last day he worked. On December 7, 1976, Henry was admitted to the hospital for a full examination of his back problem under the supervision of Dr. Hamel. Dr. Hamel determined that additional surgery would not be helpful. Henry saw Dr. Hamel again in April 1977 at which time he decided to try an epidural block. The epidural block was not successful in relieving the pain.

On September 8, 1977, Henry met with William Hunter, a clinical psychologist in private practice, to have vocational and psychological examinations done. Hunter met with Henry for three hours and had Henry take a number of tests. Based on the interview, the test results, and the facts presented at the hearing before the compensation judge, Hunter testified that in his expert opinion Henry lacked the work tolerance to do a competitive eight-hour-day/forty-hour-week job. Hunter testified that even if Henry could do some jobs part-time or for a limited time, he certainly could no longer do competitive sales as he had been doing. In addition, Hunter testified that he was not aware of any particular jobs for which Henry was qualified and which would have the conditions appropriate to meet Henry's needs to sit, stand, and lie down intermittently and which would be within Henry's work tolerance.

Dr. Hamel, the treating orthopedic physician, described the medical and physical limitations on any employment as follows:

I would restrict his lifting totally in the sense I wouldn't want him to do any lifting or bending down and picking anything up, even small items, any repetitious bending of any kind or stooping, and as I say, it would be more of a sedentary desk type job and I couldn't be sure that he wouldn't have some discomfort from sitting all day but if he could get up and move around and change positions, good possibility that he could handle something like that.

He also said that any prolonged standing, especially on a hard floor, would not be possible. Even though he was not a vocational expert, Dr. Hamel testified that Henry could do some "very light sedentary type work."

■ 1. We affirm as being supported by the evidence the finding of the compensation judge and the court of appeals that the May 4, 1971, incident was a substantial cause of Henry's back disability. The evidence indicates that dating from the May 4, 1971, incident Henry suffered continuous back pain that got progressively more severe. Both plaintiff's and defendant's medical experts testified that catching a television under the circumstances of this case could have caused Henry's type of back injuries. Finally, Dr. Hamel, the treating orthopedic physician, specifically testified that in his expert opinion the May 4, 1971, injury was a substantial cause of the later severe problems.

■ 2. We affirm the assessment of thirty-five percent permanent partial disability of the back. Dr. Hamel assessed Henry's disability as thirty-five percent permanent partial disability of the back. Dr. Strand, the adverse examining physician, assessed the disability at fifteen percent.

The compensation judge's award of thirty percent was modified to thirty-five percent by the court of appeals to conform to the treating physician's estimate. The court of appeals decision is supported by the evidence.

■ 3. We affirm as substantially supported by the evidence the finding by the court of appeals that Henry was totally disabled for a period of time beginning December 7, 1976, and continuing for at least as long as he was hospitalized for examination. However, we reverse and remand for further findings and, if necessary, further proceedings to clarify the reason or reasons for the termination of Henry's benefits as of April 12, 1977.

■ The termination of temporary total disability benefits must be based either on a finding that the employee is no longer temporarily totally disabled, *Schulte v. C. H. Peterson Constr. Co.*, 278 Minn. 79, 153 N.W.2d 130 (1967), or on a finding that the employee intended to retire on a specific date regardless of his or her disability. *Joens v. Campbell Soup Co.*, 281 N.W.2d 695 (Minn.1979).

■ Minn.Stat. § 176.101, subd. 5 (1978) defines total disability to include any "injury which totally incapacitates the employee from working at an occupation which brings him an income * * *." This statute has been interpreted to mean that an employee is totally disabled when the employee's physical condition, in combination with the employee's training and experience, and the type of work available in the employee's community cause the employee to be unable to secure anything but sporadic employment resulting in an insubstantial income. *Smith v. Civic Center Chrysler*, 270 N.W.2d 276 (Minn.1978); *Schulte v. C. H. Peterson Constr. Co.*, 278 Minn. 79, 153 N.W.2d 130 (1967).

■ It is beyond dispute that during the time an employee is hospitalized for a work-related disability the employee is entitled to temporary total disability benefits because the employee is unable to earn any income during that period. However, whether the total disability continues after the hospitalization is completed depends upon a finding of fact based on the application of the above-stated test to the facts of the particular case. On remand the court of appeals should decide whether or not Henry could work more than sporadically and whether he would receive more than an insubstantial income. The finding that Henry could possibly have worked is not an adequate basis upon which either to grant or to deny temporary total disability benefits.

■ If the court of appeals finds that Henry's temporary total disability is in fact continuing, then it must decide in the light of our recent decisions of *Saenger v. Liberty Carton Co.*, 281 N.W.2d 693 (Minn.1979), and *Joens v. Campbell Soup Co.*, 281 N.W.2d 695 (Minn.1979) whether Henry has retired at all. The most relevant evidence in the record is Henry's statement that he intended to continue working as long as he was able to work. The receipt of social security disability benefits does not support an inference that Henry retired. Social security disability payments are paid for disability and not for retirement. 42 U.S. C.A. § 423 (1974). In fact disability benefits are discontinued the month preceding the month in which the person attains age sixty-five. 42 U.S.C.A. § 416(i)(2)(D) (1974). The failure to look for work can support a finding of retirement only if the employee is not totally disabled. However, the failure to look for work does affect the weight of a claim for total disability. *Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185, 188 (Minn.1978). Perhaps additional evidence will bring the case within either *Saenger*, or *Joens* but as the record now stands, he cannot be held to have retired voluntarily.

Relator is allowed $400 attorneys fees.

Affirmed in part, reversed in part, and remanded with directions to make additional findings and to take additional evidence if deemed necessary.

SHERAN, C. J., and TODD, J., took no part in the consideration or decision of this case.