Richard FREDENBURG, Relator,

v.

CONTROL DATA CORPORATION (Self-Insured), Respondent,

and

State Treasurer, Custodian of the Special Compensation Fund, Respondent.

No. 51409.

Supreme Court of Minnesota.

Nov. 6, 1981.

Buckley & Mazorol, James W. Buckley, Minneapolis, for relator.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Rita Burns, Warren Spannaus, Atty. Gen., St. Paul, for respondents.

YETKA, Justice.

In January 1979, Richard Fredenburg filed a claim petition against his employer, Control Data Corporation, seeking compensation for temporary total and permanent partial disability allegedly caused by a work-related injury sustained on June 27, 1978. A compensation judge determined that the employee had sustained a work-related injury in the nature of an aggravation of a pre-existing back condition, was temporarily totally disabled, and had sustained a 5% permanent partial disability because of this injury. Control Data appealed to the Workers' Compensation Court of Appeals. The court of appeals modified the 5% permanent partial disability finding to 2½%. The court of appeals also reversed the compensation judge's finding that the employee had been temporarily totally disabled.[1] This reversal was apparently based on the ground that the employee had failed to make a "reasonably diligent effort" to find substitute work because he had not sought employment in the Twin Cities metropolitan area. This court granted certiorari.

1. Judge Pomush filed a dissenting opinion.

The evidence established that the employee has congenital spondylolisthesis at the base of his spine and has also suffered prior work-related back injuries. His first serious injury was sustained in 1967 when, while employed as a truckdriver, he felt sharp pains in his low back and numbness in his legs. Because of his 1976 injury, the employee left truckdriving and became a maintenance worker. Several later work-related accidents resulted in less severe recurrences of back pain.

By 1973, he was a maintenance supervisor at Control Data's Northside plant. His position was terminated, however, when the company decided to hire an outside janitorial service. The employee then performed manual labor tasks. In July 1973, he developed severe pain in his low back after two weeks of moving dirt with a wheelbarrow. He did not work again until June 1978. Control Data voluntarily paid him temporary total disability compensation during this period.

In adjudicating an earlier claim for benefits, a compensation judge determined that the employee had a 25% permanent partial disability of the back, 80% of which was attributable to his July 1973 work activities.

Following this decision, the employer's rehabilitation counselor offered the employee a job that required him to check automobiles in parking lots at the employer's main plant, occasionally to chauffeur company executives, and to assist the operator of a telephone service that received reports of maintenance problems and referred them to the appropriate maintenance staff. The employee returned to work on June 24, 1978. On June 26, 1978, the employer's rehabilitation supervisor told the employee to report to the mailroom to sort mail. The mailroom supervisor was not present, and the director of the incoming mail section told the employee to help another man lift a mailbag weighing approximately 100 pounds and to sort boxes of mail weighing 45 pounds. Within an hour, the employee had an intense backache. He started for home but had to call his wife to meet him because of his pain.

The employee sought treatment from Dr. Joseph Sweere, a chiropractor who has treated him since 1967. He received a number of treatments in the next several weeks, and also consulted Dr. Gilbert Westreich, a neurologist who had treated him previously. Both diagnosed the employee's difficulty as lumbosacral strain aggravating his pre-existing condition. Dr. Westreich examined the employee on July 24, 1978, and told him that he would be able to return to work in a month. Dr. Sweere also thought that by July 17, 1978, the employee's back had returned to its condition prior to the aggravation in June. Dr. Sweere testified that, when working, the employee should be restricted totally from prolonged repetitive hyperflexion and hyperextension activities, all prolonged standing, lifting of more than 25 pounds, and riding in a vehicle more than 30 minutes. Dr. Westreich agreed that the employee should not lift objects weighing more than 20 pounds and that he should be restricted from jobs requiring him either to stand or to sit for long periods. Dr. Sweere also indicated that the employee has a 50% permanent partial disability of the back, 15% of which he attributed to the June 1978 incident. Dr. Westreich did not express an opinion on permanent partial disability, saying only that the June 1978 incident was a "significant side factor" in the employee's present condition.

Dr. John T. Anderson, a specialist in orthopedics, testified on behalf of the employer. He agreed that the employee could not return to his former occupations, should not lift, and should have work not requiring prolonged sitting or standing. He assessed the employee's permanent partial disability at 20%, 15% of which he attributed to the 1967 injury and 2½% each to the 1973 and 1978 injuries. Dr. David W. Florence, an orthopedic surgeon, diagnosed the employee as suffering from a first-degree spondylolisthesis at the lumbosacral level, an essentially hysterical personality pattern, and a severe functional overlay. He thought that the employee had a 15% permanent partial disability secondary to the congenital condition, but not to the injury. He further

testified that the employee should not lift over 60 pounds and should not repeatedly lift more than 25 pounds, but stated that this recommendation was "precautionary" to avoid future difficulties. Subject to those restrictions, he thought that the employee could do maintenance work.

The employee testified that he telephoned the employer's rehabilitation supervisor about a month after seeing Dr. Westreich and informed the supervisor that he could return to work if Control Data had anything for him. He testified that the supervisor said that they did not have work for him. In August 1978, the employee talked with a CETA representative to obtain information about that program. He also went to the Division of Vocational Rehabilitation (DVR) and took some tests for a job requiring manual dexterity. He was unable to demonstrate the necessary skill and had not been informed of any other work at the time of the hearing. He also registered at the Faribault State Employment Services Office in August 1978 and also applied unsuccessfully for a factory job and for three janitorial jobs in March or April 1979, all in towns near his home in Waterville. In the spring of 1979, he unsuccessfully tried to drive a truck and to do some janitorial work on his own. Since July or August 1978, the employee has worked from 1½ to 4 hours twice a week as a cashier at a self-service gas station. This job is actually the employee's wife's occupation, but because of her ill health, he fills in for her at times. The employee testified at trial that he was "always looking" for light general work but that he did not recall any specific places he had gone.

The employee also testified that he cannot be active all day every day because of his condition and that he has frequent back pain that is more severe than it was before the 1978 incident, has leg pains, numbness in his left fingers, and has been losing his balance during the past year. He further testified that he has had difficulty with hearing since 1973 and some difficulty with his vision beginning after the 1978 aggravation. He helps his wife with housework, but does not mow the lawn and does not engage in any recreational activities.

The following issues are raised on appeal to this court:

I. Whether the evidence supports the finding of 2½% permanent partial disability attributable to the June 1978 injury; and

II. Whether the finding that the employee is not temporarily totally disabled is manifestly contrary to the evidence.

I. The first issue requires little discussion. The court of appeals' finding of a 2½% permanent partial disability represents its acceptance of Dr. Anderson's opinion. Because it is the province of that court to resolve conflicting medical opinions on the issue of disability, its determination is accepted by this court. *See Saenger v. Liberty Carton Co.*, 281 N.W.2d 693, 695 (Minn.1979); *Robertson v. Park Brick Finishers*, 300 Minn. 561, 562, 220 N.W.2d 489, 490 (1974).

II. The second issue concerns the requirement that an employee make a reasonable effort to obtain substitute employment as a condition to temporary total disability benefits. The source of this requirement can be found in Minn.Stat. § 176.101, subd. 2 (1980). That section relates primarily to temporary partial disability benefits, but concludes with the following statement:

If the employer does not furnish the worker with work which he can do in his temporary partially disabled condition and he is unable to procure such work with another employer, *after reasonably diligent effort*, the employee shall be paid at the full compensation rate for his or her temporary total disability.

*Id.* (emphasis added).

This court has also elaborated on the definition of temporary total disability. It is not a prerequisite to a finding of temporary total disability that the employee be absolutely helpless. *Reese v. Preston Marketing Ass'n*, 274 Minn. 150, 153, 142 N.W.2d 721, 723 (1966); *Berg v. Sadler*, 235 Minn. 214, 219, 50 N.W.2d 266, 269–70

(1951). Temporary total disability is found "when the employee's physical condition, in combination with the employee's training and experience, and the type of work available in the employee's community cause the employee to be unable to secure anything but sporadic employment resulting in an insubstantial income." *Henry v. Sears, Roebuck & Co.*, 286 N.W.2d 720, 723 (Minn. 1979); *accord, Smith v. Civic Center Chrysler*, 270 N.W.2d 276, 277 (Minn.1978); *Schulte v. C. H. Peterson Constr. Co.*, 278 Minn. 79, 83, 153 N.W.2d 130, 133–34 (1967). In other words, a sufficient market for the services of the employee must exist so that the employee is able to perform the substantial and material parts of the work or occupation with reasonable continuity. *See Salmon v. Montgomery Ward & Co.*, 281 Minn. 406, 412, 161 N.W.2d 682, 685 (1968); *Reese v. Preston Marketing Ass'n*, 274 Minn. at 153, 142 N.W.2d at 723. Finally, this court has stated that "[t]he concept of temporary total disability is primarily dependent upon the employee's ability to find and hold a job, not his physical condition." *Schulte v. C. H. Peterson Constr. Co.*, 278 Minn. at 83, 153 N.W.2d at 134.

In reaching its decision that the employee was not entitled to temporary total disability benefits, the court of appeals concluded:

The employee has not worked subsequent to June of 1978 and since that time has applied for only four jobs all of which were in his home area. He had some contact with DVR per Compensation Judge Rieke's instructions. However, the DVR counselor did not testify and we are at lost *[sic]* to know what has transpired there. Also there was contact with the employment office at Faribault and CETA in Mankato. However, it is to be noted that both jobs employee had with Control Data were in the Twin City area even though his home is outstate. Therefore, it would seem reasonable that the employee should be required to make a

job search in the area of his employment, namely the Twin City area, where job opportunities would be more numerous.

The employee must make a reasonable diligent effort to find employment within his disability restrictions. If this is not accomplished, there is no basis upon which to determine an award of temporary partial or temporary total disability benefits.

■ Apparently the court of appeals determined that the employee did not make a "reasonably diligent effort" to find substitute work because he did not seek employment in the Twin Cities metropolitan area. We hold that the court of appeals erred as a matter of law in requiring the employee to attempt to find work in the metropolitan area.

■ An employee is not required to seek substitute employment outside his own community. *See Henry v. Sears, Roebuck & Co.*, 286 N.W.2d at 723; *Smith v. Civic Center Chrysler*, 270 N.W.2d at 277. The employee resides in Waterville, Minnesota, which is approximately 60 miles from the metropolitan area. Commuting would require him to be on the road for over an hour.[2] It is clear that, given the distance and the travel time required to commute to the Twin Cities, the employee's community does not include the metropolitan area. The community in which the employee must make a reasonably diligent effort to look for substitute employment is the Waterville area.

■ Whether the employee made a reasonably diligent effort to find work in the Waterville area is a question of fact. When this court is called upon to review factual findings of the Workers' Compensation Court of Appeals, such findings must be affirmed "unless they are manifestly contrary to the evidence or unless consideration of the evidence and reasonable inferences

---

**2.** Moreover, the medical testimony indicates that such a trip was not recommended for the employee unless he could stop enroute and walk about. Given the evidence of the employee's pain and his low tolerance for physical activities, it is unreasonable to require the employee to add several painful hours of travel to his ordinary workday in order to commute to his workplace.

permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion." *Saenger v. Liberty Carton Co.*, 281 N.W.2d at 695; *accord, Grgurich v. Sears, Roebuck & Co.*, 301 Minn. 291, 296, 223 N.W.2d 120, 122–23 (1974). Our review of the record in this case convinces us that the finding that the employee did not make a reasonably diligent effort to find substitute work is manifestly contrary to the evidence.

The evidence establishes that the employee registered with the State Employment Services and the DVR in August 1978. He inquired into the CETA program and several months later attempted janitorial work and truckdriving. He also applied for a factory job and for three janitorial positions. It is unreasonable to view such evidence as establishing only a "token effort," particularly in light of the employee's testimony that he saw the Employment Services representative fairly often at the gas station where he worked a few hours a week. Moreover, the State Employment Services Office, although offering "lots of labor work," was unable to find suitable work for employee. This evidence was uncontradicted. Consequently, the only reasonable inference which can be drawn is that there was no market for the employee's services, given his disability. Such reasoning is also supported by the fact that the employer's vocational rehabilitation counselor found employee only one suitable job in a 5-year period. Because the evidence indicates that the employee made good faith attempts to secure employment in and around Waterville, the finding that he did not make a reasonably diligent effort to find substitute work must be reversed.

For the reasons stated above, we affirm the court of appeals' determination of the employee's 2½% permanent partial disability attributable to the June 1978 injury, but reverse the denial of temporary total disability benefits. We remand with instructions to award such benefits.

OTIS, Justice (dissenting).

The majority holds that an employee who has suffered a work related injury in a metropolitan area where jobs are plentiful is entitled to benefits if he leaves the city and is unable to find work in a sparsely settled outstate area where jobs are scarce. I do not agree.

The Workers' Compensation Court of Appeals has made findings on conflicting evidence which we have consistently held we are not at liberty to set aside. They held:

The employer found a job within the employee's physical limitations and he began work in June of 1978. His duties consisted of checking in cars in a parking garage, chauffer [sic] executives or customers, delivering materials, relieving the facility secretary.

The employer in effect discharged him from the job after two days work because of his bad attitude as demonstrated by the following testimony:

Diane Kay Oftedahl, the facility secretary, whom the employee was to relieve each day for approximately two hours, stated the employee said to her on several occasions that he could be making more money sitting on his butt at home rather than doing that stupid job. Further, that he hated the job—the phones, dealing with stupid peoples' problems. * * *

The employee has not worked subsequent to June of 1978 and since that time has applied for only four jobs all of which were in his home area. * * * However, it is to be noted that both jobs the employee had with Control Data were in the Twin City area even though his home is outstate. Therefore, it would seem reasonable that the employee should be required to make a job search in the area of his employment, namely the Twin City area, where job opportunities would be more numerous.

The employee must make a reasonable diligent effort to find employment within his disability restrictions. If this is not accomplished, there is no basis upon which to determine an award of temporary partial or temporary total disability benefits. * * *

Nothing in this opinion shall prevent the employee from making future claim for temporary total or temporary partial disability if he makes the proper reasonable, diligent search to find employment.

The court below has found that this employee must make "a reasonable diligent effort to find employment within his disability restrictions." It is not our prerogative to second guess that tribunal on questions of fact. I would affirm.

SHERAN, Chief Justice (dissenting).

I join in the dissent of Justice Otis.

PETERSON, Justice (dissenting).

I join in the dissent of Justice Otis.