## LEO L. LeMIEUX v. M. A. MORTENSON AND OTHERS.

234 N. W. 2d 897.

October 17, 1975—No. 45047.

*Grose, Von Holtum, Von Holtum, Sieben & Schmidt* and *Timothy J. McCoy,* for relator.

*Hansen, Dordell, Bradt & Koll, Gene P. Bradt,* and *William M. Bradt,* for respondents Mortenson and Agricultural Insurance Company.

*Michael Jackman,* for respondent Department of Highways.

Heard before Otis, Todd, and MacLaughlin, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is a proceeding brought by relator for workmen's compensation benefits arising out of two successive work-related injuries. Relator seeks review of a decision of the Workmen's Compensation Commission rejecting his claim that he is entitled

to temporary partial disability benefits up to 350 weeks as long as he earns wages in an amount which is less than those he received at the time he was injured. We affirm.

Relator was first injured on August 15, 1967, while working as a bricklayer and earning $194 a week. He was temporarily totally disabled until October 9, 1967, and, except for a 10-day period, remained disabled until May 21, 1969. On that date he was employed by the Minnesota State Highway Department at a wage of $121.42 a week, where he remained until again injured on September 23, 1969. In August 1970, relator took himself out of the labor market by purchasing a farm where he became self-employed raising pigs.

The commission awarded relator temporary total disability for 91 2/5 weeks and a 15-percent permanent partial disability of the back as a result of the first accident. In addition, relator received temporary total disability for 44 3/5 weeks and 10-percent permanent partial disability of the back arising out of the second injury.

Relator poses the issue before us in this manner:

"Where an employee is precluded from returning to his previous employment as a result of a work related injury and after the retraining necessary to enable him to earn a living, he finds employment at a reduction in wages, he should be entitled to temporary partial disability benefits for as long as he works at a wage loss or for the remainder of the 350 week temporary disability period, whichever ends first."

In a unanimous decision of the commission, relator's claim was disposed of as follows:

"Employee raised the issue on appeal that he is entitled to be paid compensation for temporary partial disability based upon 2/3 of the difference between his wages at the time of the first injury which was $194.00 and his wage during the period of time after he was retrained and working for the Highway Department when his wage was $121.42 per week. * * *

"Employee makes the further argument that after the second injury on September 23, 1969 even though his condition had stabilized and he went into business pig farming for himself about August 1, 1970, since he was unable to do anything else and he had no earnings for 1970, lost money in 1971, and made a profit of only $1,500.00 in 1972, he was entitled to be paid on the basis of temporary partial disability for the balance of the 350 week period. The Compensation Judge, however, had found that employee's condition had stabilized as early as February 3, 1970 * * *. * * * It would appear that employee under the circumstances would not be entitled to compensation for temporary partial disability since his partial disability had in fact ceased, his condition had stabilized, and he had been rated permanent partial disability and was in fact working. Despite the fact that he was not earning money, it does not appear that he could or should be continued under temporary total disability, since his permanent partial disability was clearly ratable and had been rated, and the compensation for permanent partial disability theoretically takes into consideration employee's loss of earning capacity as stated in [Pramschiefer v. Windom Hospital, 297 Minn. 212, 211 N. W. 2d 365 (1973)]."

Essentially, relator's argument in this court may be summarized as follows: After his first injury, he was entitled to and received temporary total disability benefits until he was employed by the Highway Department and again after his second injury and until he became self-employed. Because of his reduced earnings in his employment with the Highway Department, he claims a right to temporary partial disability benefits. He asserts that thereafter the permanent partial benefits should have been held in abeyance until the temporary partial terminated. The same rule should apply, he argues, with respect to the second injury when relator became self-employed. It is his position that as long as his income did not equal what he was earning as a bricklayer at the time of his first injury, he should continue to receive temporary partial benefits in an amount which would

reflect his reduction in income. Such temporary partial benefits should be paid for 350 weeks or until he earns the amount he was receiving as a bricklayer. Not until such time or until 350 weeks have elapsed should the permanent partial benefits be determined and paid.

It is the position of relator that language used in Schulte v. C. H. Peterson Const. Co. 278 Minn. 79, 84, 153 N. W. 2d 130, 134 (1967), supports the rule for which he contends. There we said by way of dictum:

"The commission's award of benefits for temporary partial disability during the intermittent periods when the employee was employed at reduced wages presents a unique, complex, and markedly different problem. The difficult question which relators urge that we answer is whether a permanent partial disability of the employee's back in a physical or medical sense precludes a finding of temporary partial disability and a continuing award of disability benefits where the employee is unable to resume sustained light work and suffers a wage loss during the periods he is employed."

We held that that issue was not properly before us and did not then decide it.

Relator further relies on the following language in Minn. St. 176.101, subd. 2:

"In all cases of temporary partial disability the compensation shall be 66 2/3 percent of the difference between the daily wage of the worker at the time of injury and the wage he is able to earn in his partially disabled condition."

We are aware of no authority for sustaining relator's contentions, and two recent cases make it clear that his theory is not in accord with our legislative policy. In Boquist v. Dayton-Hudson Corp. 297 Minn. 14, 16, 209 N. W. 2d 783, 784 (1973), we rejected the claim that permanent partial disability benefits are in the nature of general damages rather than for wage loss. We there said:

"* * * In some instances, this loss of earnings may be actual in that the employee is unable to gain income through employment. On the other hand, in the case of scheduled permanent partial disability, loss of earnings is conclusively presumed regardless of an employee's ability to work at the same or greater earnings."

This rule was reiterated in Pramschiefer v. Windom Hospital, 297 Minn. 212, 215, 211 N. W. 2d 365, 368 (1973). In Pramschiefer we held that benefits for temporary total disability and permanent partial disability are based on loss of earnings, actual or presumed, and that they are not mutually exclusive.

Here, relator received temporary total disability benefits while actually out of work and subsequently received permanent partial benefits after he had resumed work, withdrawn from the labor market, and become self-employed. Under these circumstances, the award for permanent partial disability was intended to compensate relator for presumed loss of earnings as a result of his injuries. To pay him in addition temporary partial benefits after he was employed or after he voluntarily terminated employment would confer on him double benefits not contemplated by the statute. Furthermore, there is merit in respondents' contention that relator rejected the option of accepting further retraining in a field less physically demanding without the problems attendant on a new business venture which, at the outset, had no great promise of success. We agree that the employer is not under an obligation to finance an employee for 350 weeks where an employee undertakes self-employment for which he may be ill-suited. We therefore hold that relator is not entitled to continuing temporary partial disability benefits after he has become employed at a lower wage or elects to become self-employed and has received permanent partial disability benefits.

Affirmed.