Ibrahim A. TURAY, Respondent,

v.

ALLIED ENTERPRISES, INC., d.b.a.
Central States Construction
Company, et al., Relators.

No. 47140.

Supreme Court of Minnesota.

June 3, 1977.

Ochs, Larsen, Klimek & Cesario and Gary M. Olson, Minneapolis, for relators.

Grose, Von Holtum, Von Holtum, Sieben & Schmidt and Timothy J. McCoy, Minneapolis, for respondent.

MacLAUGHLIN, Justice.

The sole issue in this case is whether the employee, Ibrahim A. Turay, injured his right knee or his left knee on August 2, 1974, in an accident which occurred within the course and scope of his employment with Central States Construction Company. The compensation judge found that Turay had injured his left knee, while the Worker's Compensation Court of Appeals held, in a 2 to 1 decision, that Turay had injured his right knee. After a careful consideration of the record, we reverse the decision of the Worker's Compensation Court of Appeals.

The story is best told through a step-by-step recounting of the evidence presented at the hearing before the compensation judge:

1. Turay, age 24, has spent most of the last 7 years attending school and working on construction jobs. He lived in the Worthington, Minnesota, area for approximately 3½ years and was a student at the junior college there.

2. In the early part of the summer of 1974 Turay began working for Central States Construction Company and, on Friday, August 2, 1974, a jackhammer he was using slipped off a metal stake and struck him in the knee. The question in this case is which of Turay's knees was injured by the jackhammer.

3. Robert Bates, the field office manager for the employer, testified that he first became aware of Turay's injury on Monday, August 5, 1974, when he was notified of the

incident by Turay's foreman. Bates spoke to Turay, who, according to Bates, showed him an injury to his left knee. Bates testified the injury was covered with a home-made bandage and that there was an abrasion below the left knee. As it was late in the afternoon, Bates told Turay to come to the office the next day. When Turay arrived on Tuesday, August 6, he was told to go see Dr. Alberto Sarayba, a physician in Jackson, Minnesota.

4. On that same day, Turay went to see Dr. Sarayba as instructed. While Turay testified that he had complained to Dr. Sarayba about his right knee, Dr. Sarayba stated in his report that Turay had complained about his left knee. Dr. Sarayba's nurse, who saw Turay prior to his examination by Dr. Sarayba, also made notes of a left-knee injury. Dr. Sarayba's records indicate that Turay's left knee was X-rayed and that treatment was rendered to the left knee.

5. Later that day, Turay returned to the employer's office and Bates made out the first report of injury for worker's compensation purposes. Bates testified that the employee again told him that he had injured his left knee, and the report described the injury accordingly.

6. Toward the end of August Turay returned to the office and told Bates his knee was still bothering him. Turay pulled up his pants leg and showed Bates his swollen knee. After Turay left the office another employee said to Bates that he thought Turay had injured his left knee but that he had just displayed his right knee. Bates then confronted Turay with the August 6 report of injury describing a left knee injury but Turay insisted that it had been his right knee which had been injured. The evidence reveals that Turay was seen by two or three doctors in late August 1974 in connection with complaints about his right knee and that surgery was performed on Turay's right knee in October 1974.

7. Irvin Jones, a personal friend and college classmate of Turay, was a co-employee on the day of the accident. Jones testified that he did not see the jackhammer hit Turay but that he saw Turay grasp his right leg and pull up his right pants leg. Jones did not see any scratch or other injury.

8. Lynn Unzicker, who had dated Turay from time to time, testified that while she had not seen Turay for several days after the accident, he had told her about the accident and had said that he was having difficulty with his right knee.

9. Turay testified that his right knee was X-rayed when he first saw Dr. Sarayba. However, Turay's own doctor, Dr. Robert A. Wengler, at the suggestion of the compensation judge, took additional X-rays of Turay's knees and in a report admitted into evidence by stipulation stated:

"After carefully reviewing the films, and comparing them with the films that were taken in August of 1974, it is apparent the films are labeled correctly. The film labeled the left knee [which was the one taken in Dr. Sarayba's office on August 6] is indeed of the left knee. * * *"

10. Turay denied at the hearing that he had ever injured either of his knees prior to August 2, 1974. Under cross-examination he specifically denied ever having injured his right knee, or ever having been hospitalized or treated by a doctor for problems relating to his right knee prior to August 2, 1974. He did admit receiving an injury to his right ankle while employed at the Campbell Soup Company prior to his employment with Central States. Subsequently, while Turay's case was on appeal to the Worker's Compensation Court of Appeals, that court ordered that a deposition be taken of Dr. Lorin Dawson. Dr. Dawson testified that Turay was hospitalized on October 11, 1973, for complaints of an injury to his right leg sustained while employed at the Campbell Soup Company. Dr. Dawson said that X-rays of Turay's right knee and lower right leg were taken at that time and that Dr. Dawson's diagnosis was "minor contusion or sprain of the right knee."

Based upon these facts, the compensation court reversed the compensation judge and

ruled that Turay had in fact injured his right knee on August 2. In its opinion the compensation court explained away Turay's testimony about which knee had been X-rayed four days after the accident by stating:

" * * * The response to that, is as the employee pointed out, he was not the x-ray technician. He was on his back. He certainly was in no position to know which knee was being x-rayed."

However, the hearing transcript shows the following testimony by Turay regarding the X-ray:

"The Court: Now, when the x-rays were taken, were you lying down or standing up?

"The Witness: I was lying down on the bed.

"The Court: When the x-rays were taken, was just one leg on the table or both legs on the table?

"The Witness: I was lying full on the table.

"The Court: With both legs on the table?

"The Witness: Yes, and I pulled up my right foot.

"The Court: So of your own knowledge it was the right leg or right knee that the x-ray was taken?

"The Witness: Yes."

Our own review of these facts, and the conclusions to be reached from them, compels us to agree with the dissenting member of the Worker's Compensation Court of Appeals who stated in part:

"Common sense here dictates, I refuse to believe that a 24 year old college student would allow the examination, x-ray and treatment of the wrong knee. It further dictates to me he would not have a device of sorts attached to the opposite knee than that which was injured. I cannot perceive of anyone of [Turay's] age, education, knowledge and experience allowing such an incongruity to happen. To believe otherwise, would be to defy human reason.

*     *     *     *     *     *

"The obvious in the instant case, I feel, stands out rather readily * * *. The employee reported a knee injury August 2, 1974. He was given medical treatment and x-rays of the left knee shortly thereafter. All of the medical records of the hospital, which the employee signed, including the nurses' notes and the doctors' notes, indicate treatment of the left knee. In fact, the employee was observed with a bandage of sorts on the left knee. In order for me to accept the version of the employee, I would have to ignore all of the medical records and the deposition of Dr. Sarayba in total. Buttressing this evidence is the testimony of Dr. Wengler concerning the x-rays of August 6, 1974 [in which Dr. Wengler stated]: ' * * * The film labeled the left knee is indeed of the left knee. * * * '

"[This], I feel is quite persuasive and identifies the knee x-rays of August 6, 1974 as those of the left knee. * * * In addition thereto, the record has ample evidence concerning an injury to the right knee at the Campbell Soup Company. This, of course, compounds the confusion with which this record is replete."

While this court is reluctant to reverse findings of fact made by the compensation court, our review of the foregoing evidence convinces us that it is insufficient to support the finding that Turay injured his right knee in the accident of August 2, 1974. While the lay witnesses' testimony on the issue was in conflict, acceptance of Turay's version of the injury would require rejection of objective X-ray evidence to the contrary and the testimony of the doctor who treated the injury. It seems extremely unlikely that this 24-year-old, college-educated employee would not have objected to the X-ray and treatment of the wrong knee.

The decision of the compensation court finds support in the testimony of Irvin Jones, the co-employee, and Turay's friend, Lynn Unzicker. However, we agree with 30 Am.Jur.2d, Evidence, § 1035, which states that where testimony of a witness is contrary to physical facts, it is to be disregarded as being without evidentiary value,

and that "[p]hysical facts which speak the truth unerringly cannot be overcome by oral testimony." Further, as this court stated in *E. C. Vogt, Inc. v. Ganley Bros. Co.,* 185 Minn. 442, 444, 242 N.W. 338, 339 (1932), "Facts, proven to the point of demonstration, control as against mere declarations of witnesses."

■ It seems clear to us that the X-ray which has been conclusively determined to be that of Turay's left knee, and the other medical evidence must control the decision in this case. To hold otherwise, we would be compelled to conclude that all references in the medical evidence concerning the left knee were mistakes, which is plainly contrary to the fact with respect to the X-ray, or to reach the equally unlikely conclusion that Turay submitted to X-ray and treatment of an uninjured knee. Having determined that those inferences are impermissible under the facts of this case, we reverse the decision of the compensation court.

Reversed.