**Dorothy KURRELL, Respondent,**

v.

**NATIONAL CON ROD, INC., et al., Relators.**

**No. 81–991.**

Supreme Court of Minnesota.

July 23, 1982.

Jardine, Logan & O'Brien, Alan R. Vanasek and Carol A. Hooten, St. Paul, for relators.

Hvass, Weisman & King and Gary Stoneking, Minneapolis, for respondent.

Warren Spannaus, Atty. Gen., and Winston Ehlmann, Asst. Atty. Gen., St. Paul, for amicus curiae Dept. of Labor and Industry.

PETERSON, Justice.

Employee Dorothy Kurrell was held eligible for rehabilitation benefits by the Workers' Compensation Court of Appeals after suffering a work-related injury to her hand. Relators, National Con Rod, Inc. (employer) and Federated Mutual Insurance Co. (insurer), appeal on the ground that Kurrell's refusal of an offer of reemployment within her medical restrictions is a forfeiture of her right to benefits. We affirm.

Dorothy Kurrell began working for employer in October 1979. She was 55 years old when she took the $4-per-hour job. Employer was at that time a small company of eight employees that manufactured aluminum connecting rods for use in air-conditioning and air-compression equipment. Initially Kurrell was responsible for deburring aluminum castings. Late in January 1980, she began working with a hydraulic press used to insert metal sleeves into the castings. On February 11, 1980, she suffered a near-amputation of her left index finger when her hand was caught in the press.

Kurrell attempted to return to her job 9 weeks later but found the tasks caused great discomfort. After 3 weeks back at work, X-rays revealed that the bone in her left finger had separated. She left her job on May 5, 1980, and underwent surgery on May 7.

While recovering from surgery, Kurrell looked for a house to buy in Walnut Grove, Minnesota—150 miles southwest of Minneapolis. She had been living in a trailer court near Minneapolis but felt that she could not afford to stay there on disability benefits. She chose the small town of Walnut Grove because she had once lived there and still had family living in the area. On June 23, Kurrell made an offer on a $5,000

house in Walnut Grove and paid $500 earnest money. The closing took place August 14, 1980. As part of her relocation efforts Kurrell arranged to work as a frycook at the Red Rooster Restaurant in Walnut Grove.

Unaware of Kurrell's plans to leave the Minneapolis area, employer retained a qualified rehabilitation consultant in July 1980 to develop a rehabilitation plan for Kurrell. A statement of restrictions and limitations was obtained from Kurrell's physician. Then, in consultation with employer, the consultant determined a course of light-duty employment that was within Kurrell's medical restrictions. In doing this the consultant was instructed to examine only the possibility of modified reemployment with employer; if that was not feasible, the consultant was to cease rehabilitation services. The resulting plan would have allowed Kurrell to work on the deburring operation and light assembly and cleaning jobs for a period of 2 months, until her dexterity returned and she felt more at ease with the hydraulic press.

Employer and insurer requested a hearing before a specialist with the rehabilitation services section of the Workers' Compensation Division to obtain approval of the rehabilitation plan. However, Kurrell was not notified of the plan or the hearing until September 11, 1980, 1 day before the hearing took place.

Kurrell appeared at the hearing without counsel and expressed her intention to relocate to Walnut Grove. Her permanent change of residence occurred September 19, 1980, while the order of the rehabilitation specialist was pending. The order, approving the rehabilitation plan and authorizing employer and insurer to discontinue rehabilitation services if Kurrell refused employer's offer of light-duty employment, was served September 25, 1980.

Kurrell worked at the Red Rooster Restaurant for 2 weeks. The parties dispute whether she quit solely because of nervous tension or because of difficulties rooted in the pain and residual disability from the injury to her hand. Claiming it was the injury that kept her from working, she appealed from the discontinuance of benefits and services. The rehabilitation review panel, after hearing testimony and viewing video tape of the offered employment, upheld the denial of benefits in an order filed January 23, 1981.

The matter then came before the Workers' Compensation Court of Appeals, which viewed the central issue as whether Kurrell's move to Walnut Grove was part of a plan to retire from the labor market. Finding that it was not, the Court of Appeals concluded that her refusal of reemployment was not a forfeiture of her right to benefits.

In a concurring opinion, two compensation court judges added, as a second ground for reversal, that the rehabilitation services section and rehabilitation review panel were authorized only to approve, reject or modify rehabilitation plans and therefore lacked authority to determine eligibility for benefits.

Employer and insurer ask us to rule that the rehabilitation services section and rehabilitation review panel did not exceed their authority in terminating Kurrell's rehabilitation services and benefits. They argue that Minn.Stat. § 176.102, subd. 11 (1980), provides for payment of benefits only "during rehabilitation under a plan" and that, if an approved plan is withdrawn because an employee refuses to participate—a sanction arguably within statutory authorization—the denial of benefits necessarily follows. Kurrell argues in response that the legal determination of eligibility for benefits is more properly left to a decisionmaker with legal training. Other benefits awarded under the Workers' Compensation Act can be terminated only pursuant to an order of a Workers' Compensation Judge. Minn.Stat. § 176.241, subds. 3–4 (1980).

In *Rippentrop v. Imperial Chemical Co.*, 316 N.W.2d 514 (Minn.1982), we held that neither the director of rehabilitation services nor a rehabilitation review panel is empowered to decide the amount of compensation to which an employee subject to Minn.Stat. § 176.102 (1980), enacted in

1979, is entitled. We have not, however, decided whether the 1979 Act authorizes rehabilitation tribunals to determine the threshold question of eligibility. And, based upon the following facts, the posture of the issue on this appeal does not permit us to do so now.

First, the view that the rehabilitation tribunals exceeded their authority did not carry a majority of the Court of Appeals and thus is not a holding that requires review. Second, insofar as the Court of Appeals addressed *de novo* the issue of Kurrell's eligibility for benefits, an examination of the authority of the lower tribunals is not essential to our determination of Kurrell's rights. Third, since the rehabilitation services section and the review panel improperly approved employer's rehabilitation plan, their orders terminating benefits must fall whether or not the orders were authorized by section 176.102. For these reasons we withhold comment on the merits of the issue while inviting legislative clarification.

The remaining issue is whether the Court of Appeals correctly ruled that Kurrell is eligible to receive rehabilitation benefits and services in the Walnut Grove labor market. Employer and insurer contend that Kurrell voluntarily moved to a limited job market area for "merely personal reasons," and as a result she violated her obligations under the statute to accept offered work within her medical restrictions or make a diligent effort to find employment in the Twin Cities labor market.

Indeed, Kurrell's motivations in moving to Walnut Grove may be viewed as "merely personal," but the relevant inquiry is whether her actions were antithetical to the purposes of the statute. It would be a harsh and rigid rule that allowed an employee to better her personal situation only at the expense of her statutory right to rehabilitation benefits. Nothing in the 1979 Act indicates that the legislature intended such a rule.

The statute seeks to encourage and facilitate an injured employee's rehabilitation, retraining or placement and thereby assist the employee in returning to gainful employment. A quicker return to work reduces the costs of workers' compensation benefits and at the same time improves the standard of living of the injured employee. Minnesota Workers' Compensation Study Commission, A Report to the Minnesota Legislature and Governor 26 (1979). The appropriate standard is one which measures the employee's actions against these objectives.

The standard employed by the Workers' Compensation Court of Appeals examines whether an employee's actions advance or impede the return to gainful employment. In determining that Kurrell's relocation was not part of a plan to retire from the labor market, the Court of Appeals found that "she looked for and did find work at her new location, indicating not an intent to retire, but the very opposite." This finding must be affirmed unless it is manifestly contrary to the evidence or unless consideration of the evidence and reasonable inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. *Saenger v. Liberty Carton Co.*, 281 N.W.2d 693, 695 (Minn.1979). There is substantial evidence that Kurrell made an earnest effort to return to the work force by accepting the job as a fry-cook. When this failed, she made a diligent search for other employment in the Walnut Grove area.

Furthermore, Kurrell did not intentionally frustrate employer's attempt to provide rehabilitation services. Prior to the closing on the Walnut Grove house, Kurrell was told by Mark Anderle, the first rehabilitation consultant to contact her, that the consulting firm had an office in southern Minnesota and that it might be possible to obtain the services in Walnut Grove. Employer did not give notice of its rehabilitation plan until 4 weeks after the closing. The decision of the Workers' Compensation Court of Appeals is not contrary to the evidence, and we accordingly affirm.

On remand, the Court of Appeals is instructed to order the provision of rehabilitation services and benefits as indicated by

Kurrell's present needs. Should such relief be inappropriate, the Court of Appeals may order the payment of wrongfully withheld benefits or other relief as it considers just.

Affirmed and remanded.