**Jay C. PAINE, Respondent,**

v.

**BEEK'S PIZZA, et al., Relators.**

**No. 82-172.**

Supreme Court of Minnesota.

Aug. 31, 1982.

involved was motivated by an effort to obtain a single criminal objective. *State v. Johnson, supra.*

Gilmore, deLambert, Aafedt, Eustis & Forde and Jay T. Hartman, Minneapolis, for relators.

Yon & Moren, Roseau, for respondent.

KELLEY, Justice.

The employer of respondent Jay C. Paine and its insurer appeal from a decision of the Workers' Compensation Court of Appeals holding that respondent was entitled to temporary total disability payments for 350 weeks terminating on March 6, 1979 and was totally disabled after that date. In so doing, the court of appeals rejected relators' contention that Paine had voluntarily left gainful employment and moved to an area in which, practically speaking, there were nonexistent employment opportunities for one with Paine's disabilities. We, therefore, are confronted with the issue of whether an employee is entitled to continuing total disability compensation pursuant to Minn.Stat. § 176.101, subd. 2 (1980) when he leaves the metropolitan area of Minneapolis-St. Paul where employment within his physical restrictions is allegedly available to move to an area where there are few, if any, employment opportunities for him. We reverse the court of appeals and hold that respondent voluntarily withdrew from the labor market, thus not making a "reasonably diligent effort" to procure employment.

In 1972, Jay C. Paine was employed as a delivery man for Beek's Pizza. On May 4 of that year, his vehicle was struck from the rear, causing him injuries to his lower back and neck. He was subsequently determined to be temporarily totally disabled as a result of injuries received in that accident combined with a prior impairment, which he had sustained as a result of a nonwork-related automobile accident in 1962. In 1976, the employer-insurer filed notice of intention to discontinue payment of compensation to employee on the grounds that he had terminated his retraining course and had moved from the Minneapolis-St. Paul metropolitan area to an area of little or no employment opportunities and, therefore, had essentially retired from the labor market.

At the age of 17, the respondent sustained head injuries and resultant brain damage in a nonwork-related automobile accident. By 1966, he had recovered sufficiently to work in a sheltered workshop operated by Good Will and thereafter had various jobs until 1972 when he became a delivery man for Beek's Pizza.

Following the determination in 1973 that, at that time, employee was temporarily totally disabled as a combined result of both his prior impairment and the injuries he sustained in the May 1972 accident, the employee, pursuant to the compensation judge's order, reported to the Division of Vocational Rehabilitation for retraining. There, he was certified for a course in accounting but discontinued before completing the course in 1973 because of his inability to comprehend the material. Thereafter, he worked for two weeks as a janitor for Control Data and quit because he wanted to find another job. In 1975,

Paine settled an action brought by him against the driver who had collided with his delivery truck in May of 1972. Meanwhile, sometime after 1972, Paine began receiving social security disability payments and continues to receive the same. In 1975, he married a woman with two teenage children who also receive social security benefits. The family moved to a farm near Glencoe, Minnesota and subsequently to a farm near Badger in northern Minnesota, where the employee and his family lived for several years. Generally, the family lived off produce raised in a large garden and from raising chickens. During these years the employee had a few odd jobs lasting for a day or so. In 1979, the employee and his wife bought a 40-acre farm in Roseau County on which his wife gardens and he raises chickens and a few pigs. The cropland is not suitable for farming because it is too swampy. The employee completed a locksmith course by correspondence in 1978 but has not been very successful in that business since he had only made 13 keys—for 75¢ each—between the completion of the course and the hearing before the compensation judge in 1979.

After moving to the northern part of the state in 1976, the employee sought work at two stores in Grygla and at several places in Wannaska, a town of 25 some 10 miles from his farm.

The employee's physical condition remained much the same as it had been at the time of the prior compensation hearing in 1972 and 1973. He had pain and disability in his back, shoulders and neck which was aggravated by bending, walking, prolonged sitting and also by physical activity. Physicians who testified at the hearing diagnosed "chronic brain syndrome" due to the 1962 injury and "chronic cervical and lumbar strain" due to the 1972 accident. A representative from the Division of Vocational Rehabilitation indicated that it would be extremely difficult to place the employee in gainful employment not only because of his back problem and his brain damage, but also because of the extremely limited job opportunities in the area where the employee had chosen to live. He further testified

that the employee's employment community reasonably should be at most within a 40-mile radius of his home. Roseau is 31 miles from his home and did, at the time, have a snowmobile industry which was in a slow-down. The only other city in the area with any significant industry was at Thief River Falls, some 60 miles away from the employee's home. Moreover, generally in the area where the employee chose to live unemployment was extremely high.

In this proceeding, the employer-insurer contends that the employee should not receive total disability benefits because he had voluntarily left gainful employment and moved to an area in which there were very few employment opportunities. The Workers' Compensation Court of Appeals rejected this contention, relying upon our case of *Fredenburg v. Control Data Corp.,* 311 N.W.2d 860 (Minn.1981). In bringing certiorari, the employer-insurer contends that *Fredenburg* does not apply to the facts of this case.

This court has consistently interpreted Minn.Stat. § 176.101, subd. 5 (1980), defining total disability to include "injury which totally incapacitates the employee from working at an occupation which brings him an income," to mean that an employee is totally disabled when his physical condition, in combination with his training and experience in the type of work available in his community cause him to be unable to secure anything but sporadic employment resulting in insubstantial income. *See Henry v. Sears, Roebuck and Co.,* 286 N.W.2d 720, 723 (Minn.1979). From the record, it is clear that where he chose to live the employee could obtain nothing other than sporadic, short-term employment resulting in grossly insubstantial income. Moreover, his self-employment attempt at locksmithing was essentially income nonproductive.

In our view, the court of appeals did not adequately meet the issue presented by the employer-insurer. That court relied upon *Fredenburg* for the proposition that an employee in his disabled condition was not required to seek employment in an area 60

miles from his home. There exist considerable factual differences between *Fredenburg* and this case. Fredenburg was an employee who had never lived in the metropolitan area and had, over the years, commuted 60 miles to and from his home in Waterville to work in St. Paul. We held, following a work-related injury resulting in temporary total and permanent partial disability, that the employee was not required to seek employment in the metropolitan area in order to make a "reasonably diligent effort" to find substitute work for purposes of receiving continuing temporary total disability benefits under Minn.Stat. § 176.101, subd. 2 (1980). Given the distance and travel time required to commute to the Twin Cities, we reasoned that the employee's community did not include the metropolitan area, and that in order to qualify for benefits the employee was only required to make reasonably diligent efforts to look for substitute employment in the Waterville area.

More recently, we considered this problem in the case of *Kurrell v. National Con Rod, Inc.,* 322 N.W.2d 199 (Minn. 1982). Following a severe industrial injury and while recuperating, Kurrell decided she could not afford to live in her home in the metropolitan area on only disability benefits. She purchased a home 150 miles away in an area where she had once lived and still had family and friends, and there she procured a job as cook in a restaurant, which was terminated shortly thereafter, apparently because she was unable to do the work. The employer and insurer in *Kurrell* contended that Kurrell voluntarily moved to a limited job market, thereby violating her obligation under the statute to make a "diligent effort" to find employment in the Twin Cities labor market.[1] After noting that the standard employed by the Workers' Compensation Court of Appeals was whether an employee's actions advance or impede the return to gainful employment, we emphasized the finding of the court of appeals that Kurrell looked for and did, in fact, find work at her new location, a finding which

was manifestly not contrary to the evidence. Furthermore, consideration of the evidence there and reasonable inferences to be drawn therefrom would not clearly require reasonable minds to adopt a contrary conclusion. We there implied that from an objective point of view, as distinguished from a subjective statement of intent to "better herself," substantial evidence existed that she did make extensive efforts not only to return to the work force but also to receive benefits of the rehabilitation program.

In the case at bar, from an objective standpoint as distinguished from the self-serving statement of saying that he hoped to "better himself" by making the move, there was no evidence to sustain the conclusion that a reasonable person in the employee's place would have quit a job in the metropolitan area to make a move expecting to earn his livelihood from extremely marginal farming or by obtaining employment in the area of the move.

Moreover, contrasted to *Fredenburg*, this case involves an employee who, at the time of the injury and for considerable time before, had lived in the metropolitan area, but after the injury he had voluntarily removed himself from that job market to an area of low employment opportunity, especially for a person with his physical and mental impairment problems.

The employee, of course, has the right to choose where he will live. It does not follow, however, that if an employee chooses to live in an area where employment opportunities for him are virtually non-existent, an employer-insurer must subsidize him by continued payment of total disability benefits. In *LeMieux v. Mortenson,* 306 Minn. 50, 234 N.W.2d 897 (1975), we held that an injured employee who decided to become a self-employed farmer raising pigs was not entitled to temporary partial disability compensation when that venture was not profitable. The decision in *LeMieux* was bottomed on the fact that the employee had

---

1. *Kurrell v. National Con Rod, Inc.,* 322 N.W.2d 199 (Minn.1982), involved a question of rehabilitation training provided by Minn.Stat. § 176.-102, subd. 11 (1980).

received an award for permanent partial disability which, under the statute then in effect, was construed to compensate him for presumed loss of earnings caused by his injuries. We added, however, that:

> [T]here is merit in respondents' contention that relator rejected the option of accepting further retraining in a field less physically demanding without the problems attendant on a new business venture which, at the outset, had no great promise of success. We agree that the employer is not under an obligation to finance an employee for 350 weeks where an employee undertakes self-employment for which he may be ill-suited.

*Id.* at 54, 234 N.W.2d at 900.

The employee here cannot be faulted for the fact he is not capable of being retrained. Moreover, there is no evidence to suggest that he had chosen to move from the metropolitan area simply in order to continue to receive compensation benefits. Likewise, his disabilities would have made it difficult for him to obtain work even in the metropolitan area. However, in our view, it cannot be said that a reasonable person in the employee's place would have made the move expecting to earn any reasonable livelihood either from the source of farming under the circumstances here existing or by obtaining outside employment in the area of Badger. More correctly, it seems to us, this move is to be viewed as a withdrawal from the labor market similar to that which existed in *LeMieux.* In *Saenger v. Liberty Carton Co.,* 281 N.W.2d 693 (Minn.1979), we held that an employee who had moved from his Minneapolis home to the State of South Carolina had effectively withdrawn from the labor market and, therefore, was not entitled to disability payments.

In our view, when Paine voluntarily removed himself from the metropolitan labor market, where there was greater opportunity for a person with his disabilities for employment, to a sparcely populated area where substantially no employment opportunities for him existed, he effectively and voluntarily withdrew from the labor market and, therefore, was not entitled to total disability compensation.

Reversed.

TODD, Justice (dissenting).

I must respectfully dissent. The majority opinion is a comprehensive, excellent factual analysis of the record. However, because it is a factual matter, we are departing from our longstanding rule of not substituting our view of the facts for that of the Workers' Compensation Court of Appeals. This is not a case of a factual error such as occurred in *Turay v. Allied Enterprises, Inc.,* 256 N.W.2d 71 (Minn.1977). There we reversed a decision awarding compensation for injury to a right knee where the record disclosed medical treatment to the left knee. Here, as the majority opinion candidly admits, reasonable minds can differ as to whether or not the claimant's move to a different geographical area constitutes withdrawal from the labor market. The fact that we may have initially decided the fact question differently should not be the basis for reversal of a disputed factual issue. I would not abandon our longstanding rule whereby we refuse to substitute our judgment for that of the Court of Appeals on factual issues especially as in this case where the factual finding is not unsupported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 15.0425(e) (1980).

SCOTT, Justice (dissenting).

I agree with the dissent of Mr. Justice Todd.

YETKA, Justice (dissenting).

I agree with the dissent of Mr. Justice Todd.