Steven KROTZER, Respondent,

v.

BROWNING–FERRIS/WOODLAKE
SANITATION SERVICE, et
al., Relators.

No. C5–90–1212.

Supreme Court of Minnesota.

Aug. 31, 1990.

David C. Holman, Cousineau, McGuire, Shaughnessy & Anderson, Chartered, Minneapolis, for relators.

Gary Hazelton, Duranske and Hazelton, Bemidji, for respondent.

SIMONETT, Justice.

We reverse the decision of the Workers' Compensation Court of Appeals and reinstate the decision of the compensation judge.

In 1976, Steven Krotzer was living in Mound and working for Browning–Ferris/Woodlake Sanitation as a rubbish hauler. On September 13, 1976, the employee had an onset of acute low back pain while lifting garbage cans. This injury was diagnosed as a chronic lumbar muscle strain

and ligament strain, and the employee was advised to pursue lighter work. The employee sought retraining through the Division of Vocational Rehabilitation (DVR). The records pertaining to the retraining, though scant, indicate that the employer and its workers' compensation liability insurer acquiesced in DVR's certification of retraining the employee for the "occupation" of "woodcraft and design technician" at the woodshop of the employee's father in Waconia. Incapable of making accurate measurements because of learning disabilities, the employee was "retrained" to make one kind of cabinet (a gun cabinet) which he intended to market through solicitations.[1]

The employer/insurer paid retraining benefits from May 30, 1977, through September 24, 1978, as well as temporary total benefits for the following year (through September 9, 1979). The employer/insurer also paid the employee compensation for a 15% permanent partial disability to the back. As of September 14, 1979, the employer/insurer had paid $41,509.03 in wage loss, retraining and permanent partial disability benefits.

In January 1980, the employee filed a claim petition for temporary total benefits from September 9, 1979. While the claim was pending, in early December 1980, the employee sold his home in Mound and moved his family to Little Fork near International Falls. He intended to use the proceeds from the sale of his home to start up his gun cabinet business and raise a few animals which was something he "always wanted to do." The employee's 1980 claim petition came on for hearing before a compensation judge on December 29, 1980. The compensation judge denied the claim finding the employee's credibility was seriously impeached by surveillance films that demonstrated he was capable of doing much heavier work than he claimed. On appeal, the Workers' Compensation Court of Appeals affirmed. In so doing, the court indicated that the employee might have a claim for temporary partial disability benefits for his self-employment activities and that he might need more retraining. The employee, who was represented by counsel at the time, did not pursue the matter further.

In 1982, the employee's family, including his brothers and parents, moved to Akeley where the employee continued to operate his gun cabinet business. According to the employee, he would experience flare-ups of low back pain which would be relieved by back rubs, hot baths and a short ride on his three-wheel ATV (all terrain vehicle). In 1987 or 1988, the employee consulted a chiropractor in Park Rapids. He later sought care from another chiropractor in Bemidji, some 46 miles from his home. The employee submitted the chiropractor's bills to the employer/insurer; when payment was denied, the employee retained new counsel. In September 1988, the employee filed a claim petition for temporary partial benefits from the time temporary total benefits stopped in September 1979, and he also claimed permanent total benefits from September 12, 1988, as well as additional permanent partial disability compensation.

The matter came on for hearing in May 1989, before a different compensation judge. The employee testified to the low back pain and disability he had experienced since 1979, and his wife and his brother-in-law testified to their observations of the employee's discomfort and back disability. Other relevant evidence included the reports of the employee's treating chiropractor, who believed the employee had suffered a continuing deterioration process in the low back. The chiropractor assessed the employee's permanent impairment at 25% and believed the employee should not lift objects of more than 20 pounds. In response, the employer/insurer submitted the reports and deposition testimony of the orthopedic surgeon retained by them and who had examined the employee in 1979 and 1980 and again in 1988. The orthopedic consultant testified that in 1979 and

---

**1.** There was a dispute as to the intent of the retraining. While the employee insisted that retraining was to lead to self-employment, the employer/insurer maintained that retraining was to lead to a job as a cabinet maker on the open labor market.

1980, he diagnosed minimal disc disease at the L4–5 and concluded that the employee had a 15% permanent partial disability. At that time, he believed the employee should be limited to lifting objects weighing 50 to 60 pounds. After examining the employee in 1988 and comparing old and new x-rays, he believed there had been no change in the employee's physical condition. The doctor found no objective evidence of further permanent disability, and he believed the employee still had a 15% permanent partial disability and should observe lifting limits of 50 to 60 pounds. The doctor did not believe the employee had been, or would be, in need of chiropractic care.

With respect to the employee's vocational skills, the employee presented the testimony of a vocational expert who did not believe the employee had the "residual functional capacity" to obtain and maintain employment with lifting restrictions of 10 to 20 pounds. The employee's vocational expert admitted, however, that if the employee could lift 50 to 60 pounds, there might be occupational areas in which he could be suitably employed. The employee's vocational expert did not believe the employee was permanently totally disabled; and even though the expert felt the gun cabinetmaking business was suitable in terms of the employee's vocational capacities, he admitted that the employee's business did not amount to gainful employment. The employer/insurer submitted the deposition testimony of another vocational expert who also did not believe the employee was permanently totally disabled. This expert felt that with lifting limits of 50 to 60 pounds, even with the employee's mental and educational deficits, there was work the employee could do. The employer/insurer's vocational expert did not think the cabinetmaking business was a very good venture.

The compensation judge denied the employee's claim, finding that his lifting restrictions were in excess of 50 pounds; that the employee had sustained a regular income with his cabinetmaking business; that he had required no medical attention for his work injury for some 9 years from 1978 through 1987; that he had failed to establish a diminution in earning capacity as a result of his work injury; and that he had failed to establish that his physical condition had changed since 1979 resulting in an increased permanent partial disability.

On appeal, the Workers' Compensation Court of Appeals reversed, concluding that the employee was entitled to temporary partial and/or permanent total benefits, additional permanent partial disability compensation and chiropractic expenses. The Workers' Compensation Court of Appeals then remanded the matter for a "redetermination consistent" with its opinion. The employer/insurer now seek review in this court by certiorari.

 Under the law in effect at the time of the employee's injury, a partially disabled claimant is required to make a reasonably diligent effort to obtain suitable gainful employment in order to qualify for wage loss benefits. Minn.Stat. § 176.101, subd. 2 (1976). An employee who is in good faith training himself for a suitable career of his own choosing does not have to sacrifice his long-range ambitions and seize any short-range line of work that is open to him. 2 Larson, *The Law of Workmen's Compensation* § 57.61(d) at 10–245, 247 (1989). At the same time, an employer should not be obligated to subsidize an employee indefinitely where an employee undertakes a career of his own choosing for which he may be ill-suited. *Hanmer v. Wes Barrette Masonry*, 403 N.W.2d 839, 840 (Minn.1987) (compensation denied to claimant who wanted to go into the tanning salon business where evidence established there were other careers to which the employee was more suited and with a greater earning capacity); *cf. LeMieux v. Mortenson*, 306 Minn. 50, 234 N.W.2d 897 (1975) (voluntary withdrawal from labor market to become self-employed in farming; compensation denied). In this case, in view of the record as a whole, including the opinions of the vocational experts of the employee and the employer/insurer, there is substantial evidence to support the compensation judge's conclusion that the employee's efforts over the past 9 years or so to

obtain suitable gainful employment were less than diligent.

In reversing the compensation judge's denial of temporary partial benefits, the Workers' Compensation Court of Appeals panel found significant the "fact" that the 1982 decision had "encouraged" the employee to seek temporary partial benefits for the wage loss incurred in his self-employment activities. Although in 1982 the Workers' Compensation Court of Appeals speculated that the employee might conceivably have a claim for further temporary benefits and/or more retraining, no such claim was made, even though the employee was then represented by experienced counsel. It seems fairly obvious to us that the employee in fact had no valid claim then and has no valid claim now. *See Paine v. Beek's Pizza,* 323 N.W.2d 812 (Minn.1982).

The Workers' Compensation Court of Appeals also determined that where an employee returns to work at a job for which he has been retrained, that the actual earnings of the employee should be presumed to reflect his earning capacity. We remind the panel that it is still the employee's burden to establish a diminution in earning capacity that is causally related to the disability. *See Arouni v. Kelleher Const. Inc.,* 426 N.W.2d 860 (Minn.1988). In this case the employee claimed that, because of low back pain, he was forced to hire his brother-in-law at a salary of $600 to $700 per month to build the cabinets. Because of his mental and educational deficits, the employee paid his wife $6,000 per year for her bookkeeping services until his accountant told him to stop. The compensation judge found that the employee was capable of doing more work than he claimed. She further found the business records, tax returns, and the testimony of the wife to be unreliable evidence of the employee's actual earnings in his self-employment activities. The compensation judge's decision in this regard was, in essence, a credibility determination which is a unique function of the trier of fact. *Tolzmann v. McCombs-Knutson Assocs.,* 447 N.W.2d 196, 198 (Minn.1989).

Finally, the Workers' Compensation Court of Appeals determined that the employee was entitled to additional permanent partial disability benefits and medical expenses based on the records and reports of the employee's chiropractor. The panel stated that these records and reports were "unrebutted" by the employer/insurer's orthopedic consultant. On the contrary, the orthopedic consultant testified that the employee's permanent partial disability had not increased since 1980 and that the chiropractor's assessment of permanency was premised on subjective complaints which the doctor was unable to verify on his examination of the employee. Conflicts in medical testimony are to be resolved by the compensation judge as trier of fact. *Ruether v. State, Mankato State University,* 455 N.W.2d 475, 478 (Minn.1990).

The employer/insurer complain that the Workers' Compensation Court of Appeals not only improperly substituted its findings for those of the compensation judge to reach its own preferred result, but that it has also either misjudged or "mischaracterized" the evidence. We agree.[2] Repeated-

---

**2.** For example, in concluding that the employee was entitled to temporary partial disability benefits, the Workers' Compensation Court of Appeals chastised the compensation judge for relying on the opinion of the employer's vocational expert who, according to the appeals panel, "failed to consider" such "significant and undisputed facts" as the employee's "organic brain dysfunction." Apparently this finding of organic brain dysfunction was derived from the testimony of a psychologist who, in 1980, evaluated the employee for his 1980 claim for total disability benefits. The psychologist gave the employee a number of tests; and in one of the tests, the psychologist noted that the employee "had a borderline organic damage level score." Aside from the fact that the compensation judge and the Workers' Compensation Court of Appeals in the 1980 claim proceedings for temporary total benefits rejected this evidence, it would seem to us that a psychologist's ambiguous interpretation of a test score hardly rises to the level of an undisputed fact. This kind of selective factfinding by the Workers' Compensation Court of Appeals has, unfortunately, also appeared before. See, for example, *Ruether v. State, Mankato State University,* 455 N.W.2d 475, 478 (Minn. 1990) (purported organic brain damage); and *Deschampe v. Arrowhead Tree Service,* 40 W.C.D. 603, 643, *aff'd in part and reversed in*

ly, we have admonished that where a compensation judge's findings are supported by evidence that a reasonable mind might accept as adequate, they should be left undisturbed. *Id.* at 478; *Schnider v. Schnider,* 449 N.W.2d 171, 173 (Minn.1989); *Tolzmann v. McCombs–Knutson Assoc.,* 447 N.W.2d 196, 198 (Minn.1989); and *Redgate v. Standard Sroga's Service,* 421 N.W.2d 729, 734 (Minn.1988). But in this case, as in the four cases just cited, the members of the reviewing panel elected "to make [their] own evaluation of the credibility and probative value of witness testimony and to choose different inferences from the evidence than the compensation judge. This is not the WCCA's role." *Redgate, supra* at 734. Under the standards of review applicable to the Workers' Compensation Court of Appeals and to this court, we are compelled, once again, to conclude that the findings of the compensation judge, having ample evidentiary support, should have been affirmed. *See Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 60 (Minn.1984). Accordingly, the decision of the Workers' Compensation Court of Appeals is reversed and the compensation judge's decision reinstated.

Reversed.

*part,* 428 N.W.2d 795 (Minn.1988) (also involv- ing a brain damage claim).