2000 SD 157

**Nancy REEDE, Claimant and Appellee,**

**v.**

**STATE of South Dakota DEPART-
MENT OF TRANSPORTATION,
Employer and Appellant.**

**No. 21437.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Decided Dec. 20, 2000.

Rehearing Denied Feb. 2, 2001.

Rodney C. Lefholz, Rapid City, SD, Attorney for claimant and appellee.

Robert B. Anderson of May, Adam, Gerdes and Thompson, Pierre, SD, Attorneys for employer and appellant.

SABERS, Justice

[¶ 1.] Nancy Reede was injured during the course of her employment with the South Dakota Department of Transportation (DOT). Reede worked and lived in the Black Hills at the time of injury and remained there for over two years. She briefly lived in several other places and eventually moved to Forsyth, Montana. Reede sought odd-lot benefits based on her inability to find suitable employment in her community. The Department of Labor (Department) determined her community to be Forsyth/Rosebud, Montana and not the Black Hills area. The Department found that suitable employment did not exist in Forsyth/Rosebud, Montana and awarded odd-lot benefits. We affirm issue 2 and reverse and remand issue 1 in part.

**FACTS**

[¶ 2.] Reede obtained employment in Rapid City with the help of her sister who was living in the area at that time. Reede had not worked in the Rapid City area prior to beginning employment with the DOT. On June 29, 1993, Reede was struck by a paver while on the job. She was thrown a short distance onto an asphalt surface and suffered extensive bruising of her right hand, right leg, left shoulder, left side of her back, left side of her pelvis and the left leg. She sought treatment at the Rapid City Regional Hospital a short time after this incident.

[¶ 3.] As a result of this injury, Reede suffers from a ten-percent impairment of her whole person.[1] Reede was never instructed that she was unable to work following the incident. It is undisputed that Reede did not search for any jobs in the Black Hills area from August of 1994 until approximately May of 1996. Reede's own vocational expert opined that "the Black Hills was a much more favorable job market for a person with [Reede's] limitations." Reede instead chose to home school her children and work as a homemaker.

[¶ 4.] Prior to the hearing, Reede moved a number of times for varying reasons. She lived in Wyoming, Miles City, Montana, Belle Fourche, South Dakota, Rosebud, Montana, Dupree, South Dakota and then in Forsyth, Montana. The Department found that Reede's moves were

---

1. Reede was diagnosed as suffering from "myofacial pain, headache syndrome, left trochanteric bursitis, possible depression, and chronic pain syndrome involving the left cervical thoracic paraspinals and left shoulder, left trochanteric bursa, left S.I. joint and left lumbar paraspinal musculature."

to follow members of her family or to find work, and that she "was forced to move from Rapid City when [her] sister went bankrupt ."

[¶ 5.] In Forsyth, Montana, Reede lives with her sister again who relocated there from the Rapid City area. The Department found that Reede moved to Forsyth out of financial necessity, intends to stay there, has a good support network in that community, and had nowhere else to live.[2] The Department specifically found that Reede's intentions in moving to Forsyth, "have never been to establish a residence in Montana for the purpose of obtaining workers' compensation benefits. Her intent has always been legitimate and she is not living in Montana to qualify for workers' compensation benefits."

[¶ 6.] While in Montana, Reede worked with a job placement specialist and a vocational counselor for the State. She registered with job service and unsuccessfully applied for more than thirty jobs. The Department found that Reede made a "reasonable search for work in her community." The Department only considered the Forsyth/Rosebud area as her community for workers' compensation purposes. The Department also found that there existed no evidence that "claimant has purposefully taken herself out of the labor market by moving to Forsyth, Montana."

[¶ 7.] As a result of these determinations, the Department concluded that the Forsyth/Rosebud area was Reede's community, and that she had met her "prima facie showing that she was obviously unemployable" in that community. Additionally, the DOT failed to demonstrate employment was regularly and continuously available in Reede's community. Claimant was awarded total and permanent disability benefits pursuant to the odd-lot doctrine. The circuit court affirmed.

[¶ 8.] DOT appeals contending: The circuit court erred in affirming 1.) the Department's decision to apply the Forsyth/Rosebud, Montana, community as Reede's "community" for purposes of determining employability, and in affirming 2.) the Department's determination that Reede met her burden of demonstrating the unavailability of suitable employment.

## STANDARD OF REVIEW

[¶ 9.] Our standard of review is succinctly stated in *Sopko v. C & R Transfer Co., Inc.*

Our standard of review, delineated in SDCL 1–26–36 requires us to give great weight to the findings and inferences made by the Department on factual questions. We examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence. If after careful review of the entire record we are definitely and firmly convinced a mistake has been committed, only then will we reverse. Questions of law, of course, are fully reviewable.

1998 SD 8, ¶ 6, 575 N.W.2d 225, 228 (citations omitted).

[¶ 10.] **1. WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE DECISION OF THE DEPARTMENT TO APPLY FORSYTH/ROSEBUD, MONTANA, AS REEDE'S "COMMUNITY" FOR DETERMINING EMPLOYABILITY.**

[¶ 11.] To claim odd-lot benefits, Reede must make a prima facie showing of total disability. *Baker v. Dakota Min. & Const.*, 529 N.W.2d 583, 585 (S.D. 1995).

A person is totally disabled if [her] physical condition, in combination with [her] age, training, and experience, and the type of work available in [her] communi-

---

**2.** Reede lives with her sister who helps her pay the rent and provide food for her four children that she raises alone.

ty, causes [her] to be unable to secure anything more than sporadic employment resulting in an insubstantial income.

*Welch v. Automotive Co.*, 528 N.W.2d 406, 410 (S.D.1995). "If it is 'obvious' that [Reede] is in the odd-lot category, then the burden shifts to the employer to show that suitable employment is available in the community for persons with [Reede's] limitations." *Id.* If it is not "obvious" that Reede falls within the odd-lot category, then the burden remains on her to demonstrate "the unavailability of suitable employment by showing that [she] has unsuccessfully made 'reasonable efforts' to find work." *Id.*

[¶ 12.] The Department found that Reede "met her prima facie showing that she is obviously unemployable and not employable in the competitive market" in Forsyth/Rosebud, Montana. As a result, the Department found she was entitled to permanent and total disability from the date of injury. This determination was supported by findings of fact and conclusions of law that exclusively focused on the Forsyth/Rosebud, Montana, "community." Based on the unique facts of this case, we must first determine whether Forsyth/Rosebud, Montana, was the proper community for determining employability.

[¶ 13.] Under current law SDCL 62–4–52(1) defines "community" as "the area within sixty road miles of a person's residence." However, Reede's injury occurred in 1993 and SDCL 62–4–52(1) was not enacted until 1994 and is inapplicable. Yet, the requirement that Reede seek employment in her community existed in 1993. As previously stated, to obtain odd-lot benefits Reede is required to demonstrate that her "physical condition, in combination with [her] age, training, and experience, and the type of work available in [her] *community,* causes [her] to be unable to secure anything more than sporadic employment resulting in insubstantial income." *Shepherd v. Moorman Mfg.*, 467

N.W.2d 916, 919 (S.D.1991) (emphasis added).

■ [¶ 14.] The Department specifically found that Reede's move was not to withdraw herself from the workforce, or to aid in obtaining workers' compensation benefits, but instead a good faith move based on financial necessity. We are asked to determine whether Reede's change of residence under these circumstances created and improperly imposed a new community for determining employability to the detriment of the employer.

[¶ 15.] The Minnesota Supreme Court in *Kurrell v. National Con Rod, Inc.,* determined that an injured employee may relocate and still be entitled to receive benefits. 322 N.W.2d 199, 202 (Minn. 1982). However, the employee must demonstrate that they "made a diligent search" for other employment in the new area. *Id.* The injured employee's motivation cannot be to "impede the return to gainful employment" or constitute "a plan to retire from the labor market." *Id.* In recognizing the right to maintain these benefits, the Minnesota Supreme Court stated:

> Indeed, [claimant's] motivations in moving ... may be viewed as "merely personal," but the relevant inquiry is whether her actions were antithetical to the purposes of the statute. It would be a harsh and rigid rule that allowed an employee to better her personal situation only at the expense of her statutory right.

*Id.*

[¶ 16.] The Minnesota Supreme Court recognized limits to this relocation policy in *Paine v. Beek's Pizza,* 323 N.W.2d 812 (Minn. 1982). The *Paine* court embraced the *Kurrell* rationale but found that the claimant did not satisfy the requirements of the rule. *Paine,* 323 N.W.2d at 815. A claimant "who, at the time of injury and for a considerable time before, had lived in the metropolitan area, but after the injury voluntarily removed himself from that job

market to an area of low employment opportunity" was precluded from receiving workers' compensation benefits. *Id.* The court recognized that "[t]he employee, of course, has the right to choose where to live. It does not follow, however, that if an employee chooses to live in an area where employment opportunities for him are virtually non-existent, an employer-insurer must subsidize him." *Id.* By choosing to withdraw from the labor market the injured employee was found to have surrendered his entitlement to workers' compensation benefits. *Id.* at 816.

[¶ 17.] Based on the findings of the Department, we cannot say that Reede surrendered her benefits by relocating to Forsyth. The Department's determinations that Reede's move to Forsyth was not a withdrawal from the labor market but was a good faith move is not clearly erroneous in light of the entire record. However, the key is what is lacking in the Department's findings. The Department altogether failed to address the reasonableness of Reede's search for employment in her other "community," the Black Hills, yet awarded benefits for the period she resided there. To limit potential abuse, before addressing the employability of Reede in the new community of Forsyth/Rosebud, Montana, the Department must consider her employability in the community where she lived, worked and was injured.

[¶ 18.] To establish a prima facie case that Reede is totally disabled based on her "physical condition, in combination with her age, training, and experience, and the type of work available in the community, [which] caused [her] to be unable to secure anything more than sporadic employment resulting in insubstantial income" she must initially meet this requirement in the community in which she resided when injured to recover for that period. *Baker*, 529 N.W.2d at 585. To hold otherwise would allow injured employees who move, even for good faith reasons, to collect benefits they would not

otherwise be entitled to receive. A claimant's private or personal choice not to seek work if it was available cannot be imposed upon the employer if work is otherwise available to the injured employee.

[¶ 19.] The record indicates that Reede may have been employable in the Rapid City area, but the Department made no specific findings on this issue and therefore we remand this case to the Department for a determination consistent with this opinion. On remand, Reede has the burden of demonstrating "the unavailability of suitable employment by showing that she unsuccessfully made 'reasonable efforts to find work in the communities in which she resided to satisfy the prima facie case for the odd-lot category.' " *Id.* at 585. Upon a showing that Reede was entitled to odd-lot benefits in her prior community, the employer then has the burden of demonstrating the "availability of suitable employment." *Id.*

[¶ 20.] A claimant who demonstrates that a change of community was done in good faith, and not for improper motives, is entitled to recover the benefits resulting from their workplace injury. *Kurrell*, 322 N.W.2d at 201. The claimant must then establish they are entitled to benefits in accord with our established procedures. An entitlement to benefits in a single community, based on an inability to secure anything more than sporadic employment, does not allow a claimant to recover benefits for periods outside that community. Such recovery is not warranted absent an independent showing the benefits are justified. It was error for the Department to award benefits for the period of over two years in which Reede resided in the Black Hills without any findings that such benefits would have been warranted at the time. Benefits based on the analysis of a single community cannot justify an award to a claimant as though she had resided there the entire time.

[¶ 21.] Therefore, we reverse and remand issue 1 for an employability determination as to the Black Hills community for

the initial period exceeding 2 years. The record establishes that Reede is entitled to benefits in the Forsyth/Rosebud community thereafter.

[¶ 22.] 2. **WHETHER THE CIRCUIT COURT ERRED IN AFFIRMING THE DEPARTMENT'S DETERMINATION THAT REEDE ESTABLISHED THE UNAVAILABILITY OF SUITABLE EMPLOYMENT.**

[¶ 23.] As indicated, we affirm on the unavailability of suitable employment in Forsyth/Rosebud, Montana, as we cannot say that "we are definitely and firmly convinced a mistake has been committed." *Sopko,* 1998 SD 8, ¶ 6, 575 N.W.2d at 228.

[¶ 24.] Therefore, we affirm issue 2 and reverse and remand issue 1 for proceedings consistent with this opinion.

[¶ 25.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.